LAWRENCE E. KELLY v. AGNES E. KELLY.[1]

October 29, 1954.

No. 36,376.

[1]Reported in 66 N. W. (2d) 606.

*Henry Levine*, for appellant.
*Frank P. Ryan*, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from part of a judgment of the district court in favor of defendant in a divorce action.

Plaintiff, Lawrence E. Kelly, commenced an action for divorce in the district court of Hennepin county in November 1951 against defendant, Agnes E. Kelly, alleging cruel and inhuman treatment. In his prayer for an absolute divorce he also sought an accounting from defendant for the money which he claimed she had received from his employer covering his wages. He also requested a sale of the real estate and an equitable division of the proceeds.

Defendant answered with a cross bill denying the allegations of cruel and inhuman treatment and alleging cruelty on the part of her

husband. In the cross bill she asked for separate maintenance, support money, and attorney's fees. At the time of the trial it was stipulated by the parties that defendant would amend her cross bill and pleadings for separate maintenance to one for a divorce on the ground of desertion and that, if the court after hearing the testimony found grounds for divorce, the question of property rights and alimony would be considered upon the evidence offered.

The court found in favor of defendant and granted her a divorce on the ground of desertion. It also heard the evidence regarding the property rights and alimony and made findings of fact and conclusions of law accordingly. It ordered judgment for defendant decreeing to her the homestead and certain personal property therein. It awarded her $1,000 payable in monthly installments of $80 a month commencing October 5, 1953. In addition, it awarded her $40 a month for her maintenance and support until the $1,000 had been paid and thereafter $100 per month until the further sum of $1,800 had been paid. It also allowed her $300 attorney's fees.

Thereafter, plaintiff moved for amended findings and conclusions, and the court amended in part paragraph 2 of the conclusions of law, judgment, and decree to read:

"* * * the homestead of the parties acquired during coverture," instead of:

"* * * the premises acquired during coverture [describing said real estate]."

Upon appeal plaintiff assigned as error: (1) That the court erred in awarding to defendant his entire estate, both real and personal; (2) that the court erred in failing to make findings as to defendant's income and financial status; (3) that the findings of fact and conclusions of law are not sustained by the evidence; (4) that the court erred in denying plaintiff's motion for amended findings; and (5) that the court erred in awarding defendant alimony.

We find no reversible error in connection with the first assignment of error. M. S. A. 518.58 provides:

"Upon a divorce for any cause, or upon an annulment, the court may make such disposition of the property of the parties *acquired during coverture* as shall appear just and equitable, having regard to the nature and determination of the issues in the case, the amount of alimony or support money, if any, awarded in the judgment, the manner by which said property was acquired and the persons paying or supplying the consideration therefor, the charges or liens imposed thereon to secure payment of alimony or support money, and all the facts and circumstances of the case." (Italics supplied.)

The court concluded here that defendant was entitled to the homestead which was acquired during coverture and to the personal property located therein. It found that the reasonable market value of the homestead was $7,500, subject to a mortgage of $2,252.69 at about the time of the trial. Under § 518.58 it was within the discretion of the court to make such disposition of the property of the parties acquired during coverture as appeared just and equitable after taking into consideration the matters referred to in that section. The court also had the right under § 518.59, upon a divorce for any cause, to award to defendant the household goods and furniture of the parties, whether or not the same was acquired during coverture. It found the furniture and personal property in the homestead to be valued at $500. Under § 518.59 the court—

"* * * may also order and decree to the wife such part of the real and personal estate of the husband *not acquired during coverture,* exclusive of future earnings and income, *and not exceeding in present value one-half thereof,* as it deems just and reasonable, having regard to the amount of property decreed to the wife under sections 518.56 and 518.58 hereof, the amount of alimony and support money awarded, if any, the character and situation of the parties, the nature and determination of the issues, and all other circumstances of the case." (Italics supplied.)

Under the findings here it appears that at the time of the trial in 1953 the parties were each about 47 years of age and had been married since June 1927. They had one married daughter, who at

the time of the trial was 21 years of age. It appears from the testimony that in about 1942 the parties bought the homestead in question by making a down payment of $500, which was paid out of moneys saved from plaintiff's wages. The record also shows that the following spring defendant commenced work on a part-time basis and that she continued to work four or five months each year for at least ten years prior to the time of the trial in April 1953. During that time, according to her testimony, she earned more than $10,000. Defendant claimed that this money was all commingled with money earned by her husband and that the joint funds were used for household purposes, living expenses, insurance, disbursements for payments on the mortgage, taxes, and maintenance and upkeep of the premises. For example, at the time the daughter was married in 1949 the parties borrowed about $440 on their joint note, which has since been paid out of these commingled funds. There was testimony of repairs for storm windows and screens amounting to $35; taxes of about $87 per year; over $300 for the painting and trimming of the house; a gas burner and water heater installed at an approximate cost of $932; and various other items of expense incidental to the owning and operating of a home. While there was testimony that for at least five and one-half years before the trial defendant averaged about $300 a month from plaintiff's salary and had also received certain rentals and unemployment wages, there was also testimony that this money had been commingled with her earnings to pay on the mortgage, living expenses, improvements, and taxes above referred to. The record also shows that plaintiff had been sick on at least two occasions and that the doctor bills and expenses in connection with an illness which had occurred two or three years prior to the trial were approximately $600 or $700, which was paid out of funds received from him. In addition, defendant also testified that "lots of times" plaintiff had to use part of his salary money to cover checks which he issued in sums of $40 or $50 or less for extra expenses he had which were not covered by his expense account in connection with business trips.

It will serve no useful purpose to attempt to go into complete details on all the income and expenses of the parties during their married life. Suffice it to say that it is apparent that the trial court took into consideration all these matters and the further testimony of defendant that she was not in good health and in a nervous condition. While the award to defendant may appear liberal, we cannot say on the record here, under §§ 518.58 and 518.59, that there was such an abuse of discretion on the part of the trial court as to warrant a reversal upon plaintiff's first assignment of error. It must be remembered that, even though the record disclosed that defendant was 47 years of age and not too well, the court did not award her permanent alimony but rather limited the alimony award to an amount which appears to have been about sufficient to pay the mortgage on the premises and reasonable living expenses until such payments are completed, so that, when plaintiff does complete the payments ordered by the court, defendant will at least have a home to live in which should be free from encumbrances.

Plaintiff refers to certain savings accounts claimed to have been held by defendant. The amounts of these accounts were offered in evidence showing that at the time of the trial defendant had a balance of $74.49 in the Northwestern National Bank savings account, $2.36 in the Produce State Bank, and a bank book of the First National Bank, St. Anthony Falls office, in the name of both parties, showing nothing in the account.

We have reviewed plaintiff's other assignments of error and find no such errors as would necessitate a reversal in any of the matters raised. We believe that the findings of fact and conclusions of law under the record here are sustained by the evidence. It is our opinion that the findings here are decisive of the case. Where decisive findings are sustained by the evidence and sustain the conclusions of law, it is not error for the court to refuse to strike them out or refuse to make additional or substituted findings and conclusions. Jarvaise Academy v. St. Paul Inst. of Cosmetology, Inc. 183 Minn. 507, 237 N. W. 183. The trial court's findings are not to be set aside unless clearly or manifestly against the weight of the evidence or without

120

any reasonable support in the evidence. Sommers v. City of St. Paul, 183 Minn. 545, 237 N. W. 427.

Affirmed.