AIMEE H. ECK v. LESTER J. ECK.

90 N. W. (2d) 211.

May 2, 1958—No. 37,235.

*Nieman & Bosard,* for appellant.
*Covell & Bachelder,* for respondent.

NELSON, JUSTICE.

Plaintiff brought an action for separate maintenance, but, upon commencement of trial, the complaint was amended to ask for a divorce and alimony. Defendant withdrew the parts of his answer which contested the grounds for divorce reserving only the question of alimony and property settlement, and the trial proceeded as by default on the issue of divorce.

Plaintiff was awarded $600 per month as permanent alimony, subject to the provision that the alimony should not, at any time, exceed 25 percent of the defendant's gross income. Plaintiff was awarded the use of the homestead of the parties, which continues to be held by them in joint tenancy. She was to pay for the maintenance, repair,

and upkeep of the dwelling house and improvements on said premises, and the defendant to pay the real estate taxes thereon, at that time approximately $320 per year. All the household goods, furniture, and equipment in the homestead were awarded to the plaintiff as her separate property. She was also awarded a 1953 Packard family automobile, one Leica camera, and such furniture in the defendant's possession in cottages on a 32-acre tract located in rural Hennepin County as plaintiff had acquired by inheritance. The defendant was additionally required to pay the premiums on, and keep in full force and effect, life insurance insuring the life of defendant in the sum of $25,000, keeping and maintaining the plaintiff as beneficiary of such insurance. There was an award of $2,500 as fees for plaintiff's attorneys in addition to the sum of $1,000 which had theretofore been paid by the defendant upon order of the court.

Plaintiff and defendant were married at Evanston, Illinois, in 1928 and at the time they were divorced plaintiff was 49 years of age and defendant 55 years of age. They have one son age 22. At the time the divorce was granted plaintiff was the owner of 550 shares of stock of the Minneapolis Gas Company having a market value of $14,000. This, at the time of trial, provided an annual income of approximately $700. Plaintiff's shares of stock had been purchased at different times, on her behalf, by defendant and paid for from his earnings, with the exception of $3,000 which plaintiff received as an inheritance and which she had applied in the purchase thereof. The separate property of defendant consisted at the time of a 32-acre tract of wild land in the southern part of Hennepin County improved by two sheet metal shacks. This land had been purchased by defendant in 1950 for the sum of $10,000. The shacks located thereon contained some furniture of nominal value. Defendant owned stocks of the reasonable value of approximately $7,000 and at the time of the trial had cash on hand approximating $6,300. He carried life insurance on his life upon which the aggregate annual premiums are approximately $2,000. The defendant valued his 32-acre tract at approximately $11,000, while a real-estate man, called as a witness by the plaintiff, gave his opinion that it had a present value of approximately $40,000. The court refused to make any award as to any of the aforesaid separate properties of the parties, permitting

each to retain their own separate properties including their joint-tenancy interests in the homestead.

This appeal is taken from the order of the trial judge denying plaintiff's motion for a new trial on the issues of property settlement, alimony, and attorney's fees. She asks for a reversal and a new trial on those issues. The main issue presented by this appeal is whether or not there was an abuse of discretion by the trial court in making a division of property between the parties, the award of alimony, and the award of attorney's fees.

Plaintiff contends that the trial court's finding that the sum of $600 per month as permanent alimony is just, reasonable, and equitable is not sustained by the evidence and is contrary to law. Plaintiff also contends that the trial court's finding that the sum of $2,500 as attorney's fees in addition to the $1,000 theretofore paid is just and proper is not sustained by the evidence and is contrary to law. Plaintiff argues that the allowance made by the trial court by way of property settlement and alimony is wholly inadequate to maintain the plaintiff's station in life and is completely disproportionate to defendant's ability to pay; that the trial court manifestly failed to take those factors into consideration as by law she contends it was required to do.[1]

The record discloses that the defendant is vice president and general manager of the Minneapolis Gas Company and at the time of trial was earning an annual salary of $34,740. Plaintiff has enumerated many items which made up the standard of living which defendant and plaintiff maintained while husband and wife in their townhouse in Minneapolis which was valued between $25,000 and $30,000. They regularly owned two cars and customarily had a new and high-priced car every spring; they held memberships in the Minneapolis Club, Minneapolis Automobile Club, and the Minikahda Club and regularly dined out at the latter club twice a week, and sometimes oftener when entertaining; for years plaintiff had been provided with fur coats, the last one being a $4,500 Canadian wild mink coat which she wore until a few months before this action was commenced; and they made trips annually to various parts of the country over the last three years which,

---

[1]See, M. S. A. 518.58, 518.59, 518.60.

among others, included a Caribbean cruise.

While during the period from March 1954 to February 1955 an analysis of the expenditures of the parties actually shows disbursements of $760 per month for personal and household expenses exclusive of income taxes, insurance premiums, medical payments, homestead repairs, substantial vacations and personal and household items furnished by defendant's employer, plaintiff states that, even though she has now reduced her standard of living, nevertheless, it has cost her $775 per month to live exclusive of income taxes, real and personal property taxes, and insurance premiums on the homestead, its contents, and her automobile; and that this sum has included nothing for depreciation on her automobile nor any funds to replace her mink coat. She testified that in order to provide her with a standard of living commensurate with that which she enjoyed before the commencement of this action, she would require, in addition to $775 per month, additional monthly amounts of $75 to $100 for travel and vacation expense; $50 for clothing; $6.50 for Blue Shield and Blue Cross insurance; $100 for entertainment at the Minikahda Club; $100 for other entertainment away from home; $50 for entertaining at home; and $15 for church and charitable contributions. The total of these amounts equals $1,171.50 to $1,196.50 per month, excluding taxes, insurance premiums, automobile and fur coat replacements; and in order to have available $1,170 per month after income taxes and other excluded items, she would require an alimony allowance of approximately $2,000 per month.

Her testimony indicates that her inability to live on only $600 per month has resulted in a present indebtedness of $2,600 to the bank and other debts of $3,000. It is conceded by the plaintiff according to schedules submitted by her that she actually spent for the 18-month period ending September 30, 1956, $13,993.20. A summary of her expenditures for this period is listed as follows:

| | |
|---|---|
| $ 875.84 | for utilities |
| 3,049.54 | for "operating expenses" |
| 662.67 | for automobile expenses |
| 4,003.68 | for food, including $957.60 for liquor and $485.20 for meals out |

```
1,159.20   for clothing
1,163.20   for medical expenses
2,300.96   for recreation and advancement
  778.11   for personal items
```

$13,993.20   Total exclusive of income taxes.

Plaintiff admits that she had no debts at the time she commenced this action. In the face of this record plaintiff finds it appropriate to criticize the trial court's action in the premises referring to the alimony award, as a meager one which is tragically and disastrously inadequate and establishes a gross abuse of discretion on the part of the trial court. Plaintiff will have a total gross income of approximately $7,900 per year consisting of alimony payments and dividends received from the stock owned by her. It should also be noted that plaintiff has the free use of the home, she has the family automobile, and she remains the beneficiary on $25,000 of his life insurance.

The defendant, after paying the monthly alimony, real estate taxes, income taxes, insurance premiums, according to the figures disclosed by the record which are not disputed, will have a net balance of $15,553.34 from which to pay his living expenses, other insurance, and other expenses necessary to maintain his position with the Gas Company and save money for future security.

It is undisputed that when the parties started out together after their marriage they had no property, and substantially all of the property which the parties now have has been saved from the defendant's salary during their married life. With respect to a division of the property of the parties, the findings of the trial court indicate clearly that it took into consideration plaintiff's apparent inability to handle money, and seriously considered further that the award of other property to the plaintiff might result in its dissipation and waste. When all facts and circumstances are considered, together with the amount of alimony awarded and the free use of the homestead, the complaint that the trial court disregarded plaintiff's need for further property settlement finds scant support. The trial court, by leaving the title to the homestead in joint tenancy, provided additional assurance to plaintiff that

she would always have a place to live and that her inability to conserve assets would not result in a loss of her home.

The trial court found from the evidence that defendant has a defective heart condition for which he was first hospitalized in 1952, and since said time defendant has been, and is now, under the regular care of a physician for his heart condition. The duties of the defendant's business position are exacting in nature, involve great responsibility, are heavy and burdensome, and require long working hours. The nature of his position and his duties require the defendant to maintain a proper and respectable living standard. The defendant's employer maintains a pension system under which retirement at age 65 is compulsory, and if continuously employed until said age in said employment, the defendant would, at age 65, be entitled to approximately $700 per month as a pension. Said pension plan further provides that voluntary retirement by the employee may be had with the consent of the employer. If such voluntary retirement, however, were now procured by the defendant, his pension under said pension system would be approximately $250 per month. In case of voluntary retirement between his present age and the age of 65, such pension would gradually increase on a sliding scale with additional years of service, but would not reach the amount of $700 per month until the compulsory age of 65 years.

■ The findings further indicate that the trial court considered that the earnings of the defendant are not likely to continue at the present rate for many more years and that he will need some reserve to continue paying alimony to plaintiff during his declining years; that consideration was given to the fact that the defendant has shown a capacity to conserve assets superior to any such capacity on the part of the plaintiff. Therefore, under the particular circumstances disclosed by this record, having regard to the ability of the husband to pay, the characteristics of the parties, and their respective ability or inability to handle money and income judiciously, the court in its discretion did not make any further property division between the parties after ordering the payment of permanent alimony at $600 per month and other perquisites.

The trial court, after having granted plaintiff her divorce as by default, and after having heard the evidence on the contested issues

involving alimony, property settlement, and attorney's fees, was, in its determination of the contested issues, entitled to consider and take into account the husband's health and age as well as his future ability to pay, the characteristics of the parties, and comparative ability to handle money, property, and income judiciously, and upon such consideration applied to the evidence as a whole, to exercise its discretion in withholding further property division.

■ Plaintiff contends that the trial court erred in failing to find specifically the market value of defendant's 32-acre tract of land and in failing to find the market value of the homestead owned in joint tenancy by the parties. The record discloses, however, that, while the trial court made no specific finding as to the present market value of these properties, it did make detailed findings as to the nature and extent of the properties owned by the parties. It made findings as to the extent and value of the stock owned by the parties; as to the cash which defendant had on hand; and as to the purchase price of the 32-acre tract. It made specific findings as to the income and earnings of the parties. As to what the findings shall encompass and contain, it seems to be the general rule that they must state sufficient ultimate facts to legally support the conclusions of law arrived at by the trial court. In re Assessment for Mississippi River Boulevard, 169 Minn. 231, 211 N. W. 9; 19 Dunnell, Dig. (3 ed.) § 9851, et seq.

In the instant case, due to the position taken by the trial court in these matters, and under the particular facts and circumstances disclosed by the record, specific findings as to the value of these properties were not necessary to support the trial court's findings nor the legal theory on which it based its decree. Since the trial court did not award the plaintiff any fixed percentage of defendant's property or earnings, failure to make a finding as to the value of the two parcels of real property could not have any appreciable effect upon the awards as made by the court, and consequently if there was any error connected with it, it was error without prejudice. See, Swanson v. Swanson, 233 Minn. 354, 46 N. W. (2d) 878. We do not think that the cases cited in support of plaintiff's position on this issue, which include Morrissey v. Morrissey, 172 Minn. 72, 214 N. W. 783; Naffke v. Naffke, 240 Minn. 468, 62 N. W. (2d) 63; and Baskerville v. Baskerville, 246 Minn. 496, 75 N. W.

(2d) 762, are controlling. The Morrissey and Naffke cases reveal that the trial court made no substantial findings of any kind in either case to support the conclusions of law. That is not the situation here.

We fail to find merit in plaintiff's claim that the trial court erred in sustaining defendant's objection to the admission into evidence of plaintiff's exhibit U which was a statement of alimony and income taxes. When the exhibit was offered and the trial court stated that he thought it was speculative and immaterial, counsel for the plaintiff stated to the court that "It is merely furnished for the ease of computation." There was no error.

Plaintiff also contends that the trial court erred in determining and considering what is termed "Balance Available for Defendant's Living, Business Promotion & Provision for Future Security." We think the trial court's determination was without prejudicial error. The finding in question consists of a mere mathematical computation. It appears that the objection is made largely because the court did not include specifically in its findings a similar computation as to plaintiff's income. It would have made no difference had the court done so. It must not be overlooked that it is defendant's income on which the plaintiff must rely for her alimony.

With respect to the trial court's finding that the earnings of the defendant are not likely to continue at the present rate for many more years, there is sufficient evidence in the record to support it directly, by inference, and otherwise.

The objection that the trial court erred in considering and determining the defendant's average income for the preceding 4 years, if it constitutes error at all, is error without prejudice. There is nothing in the findings of the court to indicate that it based any award of alimony on this average any more than on the then present income of the defendant. The court found specifically that since June 1956 defendant has been drawing a salary at the rate of $34,700 per year. The table referred to also shows the average income taxes paid by defendant, the average life insurance premiums paid, and the average amount of actual deduction taken by the defendant on his income tax returns, all of which were material to the court in arriving at a true estimate of all the circumstances to be considered affecting the future of the parties.

■ Plaintiff contends that the court erred in limiting the attorney's fees to $2,500 in addition to $1,000 theretofore paid. It appears that the trial of the case lasted 4 days. In Baskerville v. Baskerville, *supra,* the trial of the case lasted 5 weeks and involved property and income very much greater than in the case at bar. The court, nevertheless, awarded only the sum of $2,750 attorney's fees in addition to disbursements incurred. Of course the allowance of attorney's fees and other expenses of litigation is largely a matter in the discretion of the trial court. It has been the established policy of this court to be conservative in the matter of such allowances. It has been held that they are to be allowed cautiously and only when necessary. See, Spratt v. Spratt, 151 Minn. 458, 185 N. W. 509, 187 N. W. 227; Burke v. Burke, 208 Minn. 1, 292 N. W. 426; 6 Dunnell, Dig. (3 ed.) § 2804. We think the fees as allowed were within the court's discretion, that the award is not contrary to law and is sustained by the evidence.

■ In Kate v. Kate, 234 Minn. 402, 409, 48 N. W. (2d) 551, 556, this court, speaking through Mr. Chief Justice Loring, said:

"The evidence as a whole, and particularly defendant's own evidence, clearly demonstrated that such disparity of wealth as exists between these parties is due principally to plaintiff's industry and thrift on the one hand and to defendant's mismanagement and gross extravagance on the other. In such a case, any equality of circumstances that might be judicially established from time to time is bound to prove ephemeral. Our courts exist for a poor purpose if they must penalize thrift and industry and put a premium on extravagance and mismanagement in a vain effort to equalize the fortunes of these parties. * * *

"Since a court's discretion in fixing the amount of alimony to be awarded in any case must be guided in part by concern for the future welfare of all the parties involved, it was proper for the trial court in the present case to consider the fact that plaintiff is 63 years of age; that he has passed the peak of his earning capacity; that his earnings are not likely to continue at the present rate for many more years; and that he will need some reserve to continue paying alimony to defendant during his declining years. Defendant has shown a complete incapacity and/or disinclination to save money herself or to guard against the day

when plaintiff may no longer be able to continue alimony payments at the present rate. It is therefore in her own interest that plaintiff be allowed to accumulate the reserve which will enable him to continue these payments.

"* * * The trial court clearly did not abuse its discretion."[2]

We think the Kate case and cases cited therein are controlling on the facts and of the law in the case at bar.

We have examined plaintiff's motion for a new trial and her assignments of error by which she has presented the questions which we have considered. The burden is on her to show that there is no substantial evidence reasonably tending to sustain the trial court's findings. If the evidence as a whole tends to support the findings they should not be disturbed. We think that the findings of fact and the conclusions reached by the trial court find ample support in the record.[3] We therefore conclude that the trial court's order denying the plaintiff's motion for a new trial must be sustained.

Affirmed.

---

[2]Krusemark v. Krusemark, 232 Minn. 416, 46 N. W. (2d) 647; McKey v. McKey, 228 Minn. 28; 36 N. W. (2d) 17; Warner v. Warner, 219 Minn. 59, 17 N. W. (2d) 58; Haskell v. Haskell, 119 Minn. 484, 138 N. W. 787.

[3]See, 1 Dunnell, Dig. (3 ed.) § 411, and cases cited.