ROSE M. CLOUTIER v. CONRAD J. CLOUTIER.

112 N. W. (2d) 347.

December 8, 1961—No. 38,135.

*Spellacy, Spellacy & Lano,* for appellant.
*N. Schochet,* for respondent.

NELSON, JUSTICE.

This was a divorce action in which judgment was entered awarding plaintiff wife an absolute divorce, alimony, attorneys' fees and costs, household furnishings, and an indebtedness due her from defendant. It also made the parties owners of the homestead as cotenants. Plaintiff appeals from the judgment, seeking modification thereof or a new trial.

Plaintiff and defendant were married on September 29, 1951. Plaintiff was 41 years of age, defendant 36, at the commencement of the divorce action, and there was no issue as a result of said marriage. Plaintiff and defendant became acquainted while both were employed by the Singer Sewing Machine Company at Hibbing, Minnesota. After both had been fired by that company, defendant prevailed upon plaintiff to start a sewing shop in Grand Rapids, Minnesota. They established a sewing center and operated it for about a year before they were married. The testimony indicates that both parties agreed to enter business together on a partnership basis. Plaintiff ran the shop, took care of the books and income tax returns, and made the disbursements essential in carrying on the business. Defendant did selling and repairing of sewing machines over a wide area. Plaintiff did sewing and alteration work, answered the phone, and took some local orders for sewing machines. Defendant testified that plaintiff would take the names

and addresses of those interested in buying sewing machines locally and, if she was unable to close the deal, he would take over. He testified that sales ran into the hundreds between the time of their marriage and the time they went into their home.

Shortly after their marriage they decided to buy a home, the title to which was placed in joint tenancy. Plaintiff put some money of her own into the home—there was some dispute as to whether it was $2,000 or $3,000. The house cost $10,900. Plaintiff says that she paid $2,550 from her own funds to purchase furniture for the house. Admittedly there was some money in the bank which the parties kept to buy merchandise and carry on the operations of the business rather than using it for the home. Defendant testified that he sold sewing machines to obtain the money which was used in paying off the balance of the purchase price on the house.

After having paid for their home within the year after its purchase, the parties decided to erect their own building. They purchased the necessary ground for approximately $12,000, selling their home and using the funds so obtained toward paying for the lot. The Cloutier Building was completed in 1953. A cafe, a dental office, and the sewing center occupied the ground floor with 4 apartments on the second floor, 3 of which were rented. (The parties later built an addition to the cafe, which necessitated an additional expenditure of $1,878.38.) They obtained a building mortgage in the amount of $40,900 which provided for annual payments of $1,500 in reduction of the principal plus annual interest at the rate of 5 percent. Copies of income tax returns introduced in evidence indicate that 4 payments of principal and interest were made from 1954 through 1957. The principal due on the mortgage was reduced during this period from $40,900 to $12,000, such payments in those 4 years totalling $28,900 and interest payments, $6,588. The mortgage indebtedness on the property had at the time of the trial been reduced to $10,000.

The testimony admittedly proves that both of the parties gave of their time and effort to ensure the success of their business enterprises, but at the time of trial both parties questioned the comparative value of the other's contribution, the wife claiming at one time that she sold about one-half of the sewing machines disposed of but upon second

thought reducing that number to "at least a quarter" of the machines sold. The record presents much conflict in the testimony. The income tax returns indicate that the income produced by plaintiff was limited. The money used to reduce the indebtedness, pay the interest thereon, and finance the addition to the cafe during this 4-year period must have come in large part from the sale of sewing machines and from rental income from the building. During the same period the parties paid their family living expenses, took numerous extended vacation trips involving large outlays, and made other purchases, investments, and disbursements. Defendant testified, when called for cross-examination under the statute, that they cleared in their business enterprises close to $40,000 in 1952 and 1953 and that in 1954 they cleared close to that amount. He also testified that they went to Mexico once, California quite a few times, and Florida.

The record shows that defendant sold sewing machines in Minnesota and the Dakotas and that at times he had 2 or 3 men also selling for the enterprise under his supervision. During the same period he bought an airplane and 17 cars, including 3 trucks for use in their business.

As grounds for divorce plaintiff alleged cruel and inhuman treatment. Defendant did not contest the divorce, appearing in the proceeding only for the purpose of asserting his rights as to property.

Considerable testimony was entered by plaintiff regarding her husband's drinking habits, his neglect of business, and dissipation of profits because of his addiction to liquor. She claims that he took time off for extended periods and began wasting the assets of the business; that he was seen in the presence of other women; and that on one occasion plaintiff found an overnight bag belonging to another woman in his car. She introduced testimony in support of her allegations of cruel and inhuman treatment to the effect that defendant made occasional threats to the safety of her person.

The record discloses that defendant was good at selling sewing machines and that he did not drink on selling trips unless the machines were all sold and there was nothing to do. Plaintiff herself testified that for the first years of their married life defendant worked "pretty good." The record contains a letter written by plaintiff in July 1959,

in which she wrote of defendant: "He has never worked a day in his life. I have always been the slave but I'm done now."

One of the witnesses called by plaintiff was Jennie Benrud who operates the cafe in the Cloutier Building. When asked if she had seen defendant on occasions when he had been drinking, she answered: "Yes, once I guess." When asked if she had seen him with another woman, she replied: "I never saw him with another woman."

Another witness for plaintiff, William Dusbabek, testified: "I never observed him drinking," but when the same witness was asked if he had "observed him under the influence," he answered: "I have seen him a couple of times that he has been drinking, but I never saw him drink."

After a reading of the record, it is not very difficult to see why the court in one memorandum said:

"* * * While the Court was satisfied that there was sufficient cruel and inhuman conduct to warrant a divorce, the Court could not see that the grounds were much more aggravated than in the usual run of divorce cases."

At the conclusion of the trial, it was found that the testimony was sufficient to satisfy the requirements for a divorce. The decree dissolved the marriage; dissolved the joint-tenancy ownership of the Cloutier Building and made the parties tenants in common; awarded plaintiff all household furnishings located in the building; ordered defendant to repay an indebtedness to plaintiff of $2,578 and to pay a certain sum to plaintiff's attorneys, these sums to be secured by a lien upon defendant's interest in the real estate; awarded plaintiff monthly alimony payments of $100; and declared that any interest that defendant might have in a bank account growing out of the rentals was annulled except as to any deposits made subsequent to the trial.

Plaintiff has taken exception to this decree as follows:

(1) The trial court erred in view of the husband's misconduct in not awarding plaintiff sole ownership of the homestead.

(2) The trial court erred in ignoring uncontroverted evidence on the relative contributions of each party and in not awarding plaintiff more.

(3)   The trial court erred in not subjecting defendant's interest in the real estate to a lien as security for alimony payments.

It is clear from the memoranda of the trial court attached to the original findings and to its order after hearing the motions by both parties for amended findings that the court gave thorough consideration to this case and that his final decision is his considered opinion as to what would be a just and proper disposition of the property acquired by the parties during coverture. The court stated that while the conduct of defendant toward plaintiff was not the best, yet it was not in the view of the court so reprehensible that defendant should be stripped entirely of his interest in the property which he helped to acquire and produce. The trial court felt that the evidence presented would not justify a finding that plaintiff contributed anywhere near all the money which went into paying for the real estate and that the record indicates that through his sales program defendant did in fact produce most of the money which made it possible to pay the indebtedness on the Cloutier Building down to the balance of $10,000 due when this case was tried. The court further stated that the conduct of defendant did not justify taking from him all his property rights, particularly in view of the fact that plaintiff is capable of earning her own living. Its decision was reached in part by reason of the fact that the parties were partners as well as husband and wife and that as nearly as possible a 50-50 division should be made between them. The court took into account also that defendant has a daughter by a previous marriage to support.

The statute applicable here is Minn. St. 518.58, which reads as follows:

"Upon a divorce for any cause, or upon an annulment, the court may make such disposition of the property of the parties acquired during coverture as shall appear just and equitable, having regard to the nature and determination of the issues in the case, the amount of alimony or support money, if any, awarded in the judgment, the manner by which said property was acquired and the persons paying, or supplying the consideration therefor, the charges or liens imposed thereon to secure payment of alimony or support money, and all the facts and circumstances of the case."

Plaintiff cites Baskerville v. Baskerville, 246 Minn. 496, 508, 75 N. W. (2d) 762, 770, in support of the proposition that:

"* * * the delinquency of the parties is a material element in fixing the amount of alimony and the division of property."

Plaintiff also cites Swanson v. Swanson, 233 Minn. 354, 46 N. W. (2d) 878, in support of this rule.

Both of the foregoing cases are factually distinguishable since in both cases the determining factor was the conduct of the wife. We think, however, that the principle enunciated in these cases is clear and that, if awarding alimony is justified, the trial judge may balance prudence and sobriety on one hand and intemperance and extravagance on the other. Before this court would reverse in this case it would have to be clearly shown that the trial court has abused its discretion in reaching its conclusions on the several issues before it.

Plaintiff cites Eck v. Eck, 252 Minn. 290, 90 N. W. (2d) 211, as authority for her position that the parties' comparative ability to conserve the assets and their propensities toward dissipation and waste should be considered. Viewing the record as a whole, there does not appear to be any serious question but that defendant was the main source of income of the parties while they operated the business together. It would appear that the trial court's determination that defendant produced most of the money during the operation of their enterprise was based upon the whole record. It is quite clear that plaintiff did not try to minimize damages to her finances. While the record shows very little attempt on defendant's part to find any gainful employment since the separation, there does not appear to have been any effort on plaintiff's part to engage in the business in which she claims to have been the main income producer. Plaintiff has admitted ability and reputation as a seamstress and in operating a sewing center. She completed high school and after that took a dress-designing course. She is an honorably discharged Wave with the privileges and benefits of a former member of the armed forces. The only evidence of any disability of plaintiff is nervousness allegedly resulting from her marriage to defendant. Defendant, on the other hand, did not go any further than the tenth grade in school, wears glasses, has no vision in his

right eye, has defective vision in his left eye, and on that account has found it difficult to obtain employment. Actually, plaintiff is in a much better position than defendant with regard to health, education, finances, and prospective employment.

We made the statement in the Eck case (252 Minn. 296, 90 N. W. [2d] 216):

"The trial court, after having granted plaintiff her divorce as by default, and after having heard the evidence on the contested issues involving alimony, property settlement, and attorney's fees, was, in its determination of the contested issues, entitled to consider and take into account the husband's health and age as well as his future ability to pay, the characteristics of the parties, and comparative ability to handle money, property, and income judiciously, and upon such consideration applied to the evidence as a whole, to exercise its discretion in withholding further property division."

Plaintiff's capabilities are excellent for future employment. She is apparently in good health and should not find any difficulty in establishing herself in a gainful employment. If plaintiff had been awarded the entire interest in the Cloutier Building, defendant would have been stripped of all income and property rights as a result of the divorce. The circumstances disclosed here would hardly justify awarding the entire property to plaintiff in view of the facts that there are no children, the parties were partners, defendant contributed heavily through earnings as a salesman to building costs and debt reduction during coverture, and plaintiff is not an invalid and has amply demonstrated that she can earn her own living. Since the trial court did not order a sale of the real estate and division of the proceeds, plaintiff will continue to enjoy certain homestead rights. The court stated clearly that though it had seen fit to award a divorce to plaintiff upon the evidence adduced on that issue, nevertheless the wrongful conduct on the part of defendant was not so reprehensible as to justify depriving him of all of his interest in the real estate which had been acquired by them as partners and through their joint efforts.

Plaintiff cites the following as authority for awarding the homestead to her: Kelly v. Kelly, 243 Minn. 114, 66 N. W. (2d) 606; Albertson

v. Albertson, 243 Minn. 212, 67 N. W. (2d) 463; Swanson v. Swanson, 243 Minn. 516, 68 N. W. (2d) 418. The facts in the Kelly case are easily distinguishable. There the court awarded the homestead and certain personal property to the wife who was 47 years of age and in ill health. The court did not award permanent alimony but limited it to an amount sufficient to enable her to pay an encumbrance on the homestead and to provide reasonable living expenses until the encumbrance might be paid in full. The Albertson case upholds the proposition that (243 Minn. 218, 67 N. W. [2d] 467):

"* * * the court may now make such disposition of property acquired during coverture 'as shall appear just and equitable.' *This determination involves the exercise of wide discretion by the trial court.*" (Italics supplied.)

The Swanson case is to the same effect.

To say that the husband contributed nothing or even the lesser part to the acquisition of the parties' property during coverture is simply not justified by the record. A careful reading shows that the testimony is sufficiently conflicting to present a fact issue and will support a finding that both parties, each in his own way, made contributions to the whole of the enterprise. The trial court was able to observe the demeanor of the parties and their witnesses and to evaluate the various factors bearing on their credibility. Stoll v. Stoll, 243 Minn. 510, 68 N. W. (2d) 367.

■ The judgment imposed two liens against defendant's interest in the building which the parties now own as tenants in common. The judgment provides:

"4. Defendant is ordered to pay to plaintiff the indebtedness due to her in the sum of Twenty-five Hundred Seventy-eight and no/100ths ($2,578.00) Dollars * * * and said indebtedness is a lien upon defendant's interest in said real estate.

"5. Defendant is ordered to pay to plaintiff's attorneys, * * * for attorneys fees and expenses, the sum of Eight Hundred Nine and 75/100ths ($809.75) Dollars * * * and said indebtedness for attorneys fees and expenses is an additional lien upon defendant's interest in said real estate."

In addition to these liens plaintiff now contends that there should be an additional lien as security for alimony payments. She cites Minn. St. 518.60, which reads as follows:

"Upon a divorce for any cause, the court *may* also order and decree to the wife such alimony, not exceeding one-half of the husband's future earnings and income, as it deems just and reasonable, having regard for the circumstances * * *, and *may* make the payment thereof a lien or charge upon any real or personal property of the husband." (Italics supplied.)

Minn. St. 518.60 is not mandatory but is permissive in its application. The word "may" allows the trial judge discretion and his exercise thereof may not be overturned unless it was abused. See, Ruprecht v. Ruprecht, 255 Minn. 80, 96 N. W. (2d) 14.

Plaintiff also cites Mahoney v. Mahoney, 59 Minn. 347, 61 N. W. 334, and Roberts v. Roberts, 135 Minn. 397, 161 N. W. 148. Each of the foregoing cases has been carefully considered in the light of the trial court's findings; nothing in them is inconsistent with the refusal of the trial court to grant plaintiff's request to amend the findings and conclusions of law. The factors urged by plaintiff in support of her contention had no doubt been taken into consideration by the trial court when it entered its findings of fact and conclusions of law herein.

Plaintiff has failed to establish that the trial court abused its discretion.

The judgment appealed from is affirmed.