# JEAN C. BOLLENBACH v. WILLARD MARSHALL BOLLENBACH, JR.

175 N. W. (2d) 148.

January 2, 1970—No. 41694.

Richard E. Kyle, B. C. Hart, Bernard P. Friel, Samuel L. Hanson, and Briggs & Morgan, for appellant.

Richard J. Leonard, Terence O'Loughlin, and Altman, Geraghty, Leonard & Mulally, for respondent.

SHERAN, JUSTICE.

Appeal from a divorce decree and from an order denying defendant's motion for a new trial. The issue is whether the division of property decreed by the district court can be sustained. Subject to the modifications hereinafter noted, we affirm.

## FACTS

The parties were married in 1949. They have three children, Lesley Jean, born November 24, 1953, and twins, Willard III and Ann, born January 29, 1956. Plaintiff has not been employed since her marriage. She has, however, performed her duties as wife and mother in an exemplary way. Between 1949 and 1963, the family relationship was apparently a pleasant one. In 1963 defendant began to show signs of being dissatisfied with the routines of his situation in life. In 1964 plaintiff suffered an illness requiring hospitalization and she appears not to have fully recovered from the effects of this experience. In July 1966, plaintiff learned that her husband was emotionally involved with Mrs. Otto (Nancy) Christensen, their neighbor. Although defendant then declared that this affair was at an end, in March 1967 he requested that plaintiff divorce him so that he could marry Mrs. Christensen. Separation and this divorce action resulted. Disruption of the marriage caused plaintiff to suffer a reactive de-

pression requiring medical care. While the divorce action was pending in the district court, defendant commenced, and borrowed funds for, the construction of a new home which was to serve as the domicile for himself, his contemplated wife, and her children after completion of divorce proceedings. The anticipated cost of this structure: $300,000.

The gross value of the assets of the parties and their children as of December 7, 1967, exceeded $5,000,000. Defendant's holdings were worth almost $4,000,000 including $240,000 of borrowed funds held in escrow to build the new house and the real estate on which it was to be built, which was valued at $10,000. He had fixed liabilities (principally bank loans) of about $1,000,000. Trust funds for the children amounted to about $1,000,000 and, in addition, the children owned common stock of considerable value. Property held in plaintiff's name was valued at about $250,000. Defendant, acknowledging that plaintiff is entitled to a divorce and custody of the children, contends that the trial court acted unreasonably and arbitrarily in decreeing about one-half of his net estate (approximately $1,500,000) as a lump-sum award and attorneys' fees and accountants' fees in the amount of $52,500.

## TRIAL COURT DECISION

Judge Ronald E. Hachey, the trial judge, announced his intended decision of the matter by a memorandum filed February 21, 1968. In summary, he stated:

As of December 7, 1967, defendant owned assets with a value of approximately $3,755,000 exclusive of an equity interest in a Universal Oil Products incentive plan (valued at about $50,000) and the homestead (worth about $80,000, but subject to a $30,000 mortgage).

Defendant's fixed liabilities amounted to about $1,142,500, consisting principally of bank loans. He had an outstanding contingent liability in the amount of about $1,225,000, existing because of his guaranty of the obligations of a number of "racquet clubs" then in the process of construction.

Defendant's net worth as of December 7, 1967, was found to be approximately $2,875,000. In arriving at this figure, the trial court excluded the contingent liability and declared that indebtedness incurred by defendant for the construction of the new home was to be disregarded, explaining:

"* * * [W]hat the Court has in mind is to take the total value of defendant's assets and then to deduct therefrom the amounts of money that he owed, and then proceed to make an even distribution of the balance. However, before making this distribution and division, the Court is disposed to withhold from the amounts owed by defendant those expenses and items as being connected with the 'Poison Ivy' estate, which are first deducted from his amounts owed for consideration of the division. On that basis, the Court has determined that the liabilities (for division purposes) of the defendant are as follows:

| | |
|---|---:|
| "Total amounts owed (carried forward) | $1,142,578.00 |
| "Less Escrow for Building Fund | 240,000.00 |
| "Less Finder's Fee | 20,000.00 |
| "Less Architect's Fee (paid) | 2,500.00 |
| "Less Value of Real Estate (for 'Poison Ivy' home) | 10,000.00 |
| | $ 272,500.00 |
| "Adjusted Liability Figure of Defendant | $ 870,078.00 |
| "Plaintiff's Liabilities | 11,000.00 |
| | $ 881,078.00 |
| "Total assets of defendant (Carried forward) | $3,755,711.00 |
| "Adjusted liability | 881,078.00 |
| | $2,874,633.00 |

"As pointed out in the above figures the final net worth figure to be used as representing defendant's assets was $2,874,633.00.

Divided in half would mean that the plaintiff is to be awarded a lump sum settlement figure amounting to the sum of $1,437,316.50. The net figure is based on stock valuation as of December 7, 1967, and *adjustments can be made accordingly.*" (Italics supplied.)

The trial judge's February 21 memorandum recognizes that a lump-sum property settlement would have significant tax consequences and urges the parties to propose a method by which the settlement could best be put into effect. The judge felt that after the procedure for effectuating the settlement was determined the tax liability arising because of the settlement should be "assumed in equal proportions by both parties."

Judge Hachey recognized that plaintiff had assets approximating $250,000 in her own name and that trusts established for the benefit of the children totaled about $1,000,000. Even so, expressing confidence in the ability of plaintiff to manage her financial affairs and provide a home for the children, he was disposed to "leave her assets intact" and to award the homestead to her in light of her assumption of "the full responsibility of the support, maintenance, education, and future welfare of the children."

### FINDINGS AND CONCLUSIONS

Findings of fact and conclusions of law were filed on June 21, 1968, incorporating, in substance, the principles and computations set out in the memorandum which has been reviewed. Plaintiff was awarded the homestead of the parties, subject to existing encumbrances, together with the furnishings and fixtures located in it except for certain specified items of personal property awarded to defendant. In lieu of alimony and support money and as division of the property of the parties, defendant was directed to pay to plaintiff in cash, stocks, or securities an amount equivalent to one-half of his net worth, less one-half of any amount of tax liability incurred by reason of compliance with the order for property division. Attorneys' fees in the amount

of $50,000 and accountants' fees in the amount of $2,500 incurred by plaintiff were ordered to be paid by defendant.

In a memorandum which accompanied these findings of fact, conclusions of law, and order for judgment, the trial judge expressed regret that the parties had not submitted a plan for putting in effect "what the Court had in mind as to distribution of the property of the parties."

## PROPOSED AMENDMENTS

At this stage, by appropriate motion, defendant proposed amended findings of fact and conclusions of law which emphasized the separate resources of plaintiff and the children; deflated defendant's net worth; adverted to the encumbered state of the bulk of defendant's stock; and proposed, in substance, these provisions for division of property, permanent alimony, and child support:

(a) Plaintiff to be given $100,000 outright, plus the homestead (free and clear) and its contents with specified exceptions;

(b) Plaintiff to receive $20,000 a year as permanent alimony terminating on her remarriage or in the event of the death of either party;

(c) Plaintiff to receive as support for each child to age 21 the sum of $4,000 a year. In addition, defendant to be responsible for all expenses of college education and medical care for the children.

By order dated October 4, 1968, the district court denied defendant's motion for amended findings but its conclusions of law were amended to provide:

"In lieu of alimony and support money, and as a division of the property assets of the parties, the defendant shall pay to plaintiff in cash, stocks, or securities an amount equivalent to one-half of his net worth as hereinabove described, amounting to the sum of $1,422,530.97, *less any and all tax liability incurred by reason of payment of any capital gain taxes necessary to ef-*

*fect the transfer or sale of any stocks or securities or other assets in compliance with the order herein.*" (Italics supplied.)

In his memorandum filed with the order, the trial judge states:

"Upon a further review of the problem, the Court is of the opinion that the most equitable basis of distribution is to treat the assets as though they were to be disposed of in their entirety, and then take the net proceeds after the transfer costs and taxes have been disposed of, and divide them equally between the parties.

"This is not to be taken as a new net worth basis. Should defendant find it possible to borrow sufficient money to give plaintiff her net figure of $1,422,530.97, and should this payment be effected without a sale or transfer of all or most of the stock in question, then, in that event, plaintiff's net figure shall not be reduced by any amount equal to what a capital gains tax might be, had there been an actual transfer of stock from defendant to her. In other words, if defendant transfers stock to plaintiff, upon which transfer there will be owed a capital gains tax, then plaintiff shall assume all of such capital gains tax and other incidental costs in effecting the transfer to her. Conversely, if no tax liability is incurred, plaintiff should not be charged therefor."

A judgment and decree pursuant to the findings of fact, conclusions of law, and order for judgment, as amended, was entered October 10, 1968, and the appeal was then taken.

### DEFENDANT'S CLAIMS

Upon appeal, defendant contends:

(1) The lump-sum award made in lieu of alimony and support money is so excessive as to amount to a punitive award which is unjust, unauthorized, and prohibited by the prior decisions of this court.

(2) The trial court failed to give appropriate consideration to the wife's substantial wealth and to the nonmarital source of the husband's assets.

(3) The lump-sum award completely ignores the economic interests of the children by failing to adopt measures to guarantee separate and identifiable provisions for their care and support.

(4) The lump-sum award was an inappropriate form of award because it would dissipate the assets of the defendant by compelling untimely forced sales and producing substantial tax liabilities; because nearly all of defendant's assets are pledged as collateral for loans and contingent liabilities and are not available for the sales or transfers required by the award; because contingent liabilities may absorb all of the assets retained by defendant after compliance with the award; and because the award ignores the possibility of the remarriage of plaintiff, which in turn would lead to the possibility of all of this wealth, which is derived from defendant and his family, passing to a complete stranger.

(5) The amount allowed as attorneys' fees and accountants' fees is excessive.

GENERAL PRINCIPLES

It is axiomatic that in divorce cases the district court must be accorded a broad discretion with respect to the division of property, allowance of alimony, provision for the custody and support of the children of the parties, and allowances for expenses of litigation. See, e.g., Borchert v. Borchert, 279 Minn. 16, 154 N. W. (2d) 902; Annotation, 1 A. L. R. (3d) 6. Minn. St. 518.58 permits the trial court to make such disposition of property acquired during coverture as "shall appear just and equitable, having regard to * * * all the facts and circumstances of the case." Section 518.59 permits the trial court to decree to the wife such an amount not exceeding one-half of the property of the husband not acquired during coverture "as it deems just and reasonable * * *."

This court, when called upon to review the exercise of trial court discretion in a case such as this, will and must affirm the decision made if it has an acceptable basis in fact and principle

even though we might have made a different disposition of the problem.[1] We do not find in our precedents any decision dealing with a situation where wealth of comparable magnitude has been allocated between the parties by the court unaided by an agreement as to property division proposed by the litigants.

The primary purpose of any alimony or support decree is to provide a substitute for the husband's duty to support his wife and children. Johnston v. Johnston, 280 Minn. 81, 158 N. W. (2d) 249. We have held that the alimony award should not be limited to the wife's bare necessities of life, but should be large enough to permit her to enjoy the station in life of the parties prior to the divorce, commensurate with the husband's earning capacity and property holdings though it should not enable the wife to improve upon her former condition and situation. Hempel v. Hempel, 225 Minn. 287, 30 N. W. (2d) 594.

While the relative fault of the parties is a factor to be con-

---

[1] Cozik v. Cozik, 279 Minn. 91, 155 N. W. (2d) 471; Posselt v. Posselt, 271 Minn. 575, 136 N. W. (2d) 659.

In Ruprecht v. Ruprecht, 255 Minn. 80, 90, 96 N. W. (2d) 14, 23, we said: "* * * In the disposition of property acquired during coverture the court may upon statutory authority make such disposition as shall appear just and equitable, having regard to the nature and determination of the issues in the case. * * * In exercising sound discretion the court may consider the ages of the parties and the earning ability of each; the conduct of their marriage and its duration; the station they occupy in life; the circumstances and necessities of each; the probability of continuing present employment into the future, as well as the capacity and ability to obtain new employment under changing circumstances and needs; the financial circumstances of the parties as shown by the property acquired, together with its value and income-producing capacity; the accumulated debts and liabilities if any; and all facts with respect to whether the property of the parties has been accumulated before or after marriage. The court may also consider all other matters disclosed by the evidence."

For other recent expressions pertaining to this problem, see, Krohn v. Krohn, 284 Minn. 95, 169 N. W. (2d) 389; Vandewege v. Vandewege, 284 Minn. 330, 170 N. W. (2d) 228.

sidered in formulating an alimony award, it is not a purpose of the award to punish such misconduct. Johnston v. Johnston, *supra*. A husband cannot discard his wife at will and thereby condemn her to a lower station in life. See, Baskerville v. Baskerville, 246 Minn. 496, 75 N. W. (2d) 762.

The trial court in divorce proceedings, having determined that one of the parties is entitled to a divorce, and being called upon to make a division of property, must determine as accurately as possible the kind and value of the real and personal property owned by the parties and, in some cases, the resources owned by or held for the benefit of their children. In addition, the liabilities of the parties, including liens or other claims to which this property is subject, must be fixed in order to ascertain the net amount of the assets available for division. This being so, the parties, called upon to supply this essential information in a proper way, must make a full and accurate disclosure of their assets and liabilities.[2] Failure to do so justifies inferences adverse to the party who conceals or evades.[3] A party to a marriage subject to severance in divorce proceedings cannot be permitted to subvert the orderly processes of the courts by concealing, dissipating, or misusing his assets in anticipation of divorce so as to reduce the property available for division or as a standard for the court in fixing payments for alimony or support.[4]

### Equal Property Division

In response to defendant's claims, we have decided that the principle of equal division of the husband's property, whether

[2] Rider v. Rider, 251 Iowa 1388, 105 N. W. (2d) 508; United States Nat. Bank of Denver v. Bartges, 122 Colo. 546, 224 P. (2d) 658, certiorari dismissed, 340 U. S. 957, 71 S. Ct. 575, 95 L. ed. 689.

[3] Rentel v. Rentel, 39 Wash. (2d) 729, 238 P. (2d) 389; Frownfelter v. Frownfelter (Tex. Civ. App.) 294 S. W. (2d) 745. See, Peterson v. Peterson, 274 Minn. 568, 144 N. W. (2d) 597; Johnson v. Johnson, 250 Minn. 282, 84 N. W. (2d) 249.

[4] Maruska v. Equitable Life Assur. Society (D. Minn.) 21 F. Supp. 841; Annotation, 49 A. L. R. (2d) 521, 587.

acquired before or during coverture, is acceptable under the unusual circumstances of this case. In so far as the decree can be construed as being at variance with this principle, it should be modified to conform with it, except that the order of the trial court giving the homestead and its contents to the wife is affirmed as a means of implementing the trial court's custody order.

1a. The principle of property division used by the trial court was that defendant's net assets should be divided equally between the parties with plaintiff's share to be paid over in a lump sum in lieu of alimony and support money. This plan was carried into effect but for these variances: Expenditures made and indebtedness assumed by defendant because of the construction of the house to serve as a marital domicile for himself and Mrs. Nancy Christensen were disallowed; the homestead and its contents were decreed to plaintiff; and art objects valued at $7,500 carried in defendant's statement of his assets were assigned to the plaintiff without reducing the net assets of defendant available for distribution between the husband and wife. Finally, plaintiff interprets the court's decree to put on defendant the full burden of stock value losses occurring between December 1967 and the final execution of the order for distribution.[5]

The case before us is unique in that here we are dealing with a situation where in December 1967 the assets of the husband had a value of approximately $4,000,000 while his fixed liabilities approximated $1,000,000 and his contingent liabilities, $1,000,000 more. Also, in this case the wife owns property in her own name, acquired from her husband's parents during the mar-

---

[5] We take judicial notice of the fact that the value of Universal Oil Products stock, the primary asset constituting defendant's net worth, has decreased substantially from the price of about $85 per share prevailing at the time of trial. Shortly after trial, U. O. P. announced a two-for-one stock split, and the price as of December 20, 1969, was $26 per share. This depreciation caused defendant a loss, which, although unrealized, significantly decreased his ability to satisfy the award herein.

riage, worth approximately $250,000, while the children are beneficiaries of trust funds established for their benefit having a December 1967 value approximating $1,000,000. In addition, each of the children has received gifts of stock from the paternal grandparents.

Apart from the difficulties in effecting an immediate division of the husband's property, which will be considered later, it is neither equitable nor just, defendant contends, to give Mrs. Bollenbach one-half of her husband's property. To do so, he argues, is to endow her with an estate much greater in amount than will ever be required to maintain for her the station in life she enjoyed before the marriage was disrupted.

If it be true, as defendant contends, that the purpose of property division, like alimony, is simply "to provide for the continued support of the wife," at least in this situation, where the wife has made no direct contribution to the accumulation of the assets, it would be extremely difficult to affirm a principle of division the result of which would be to give plaintiff $1,500,000 in a lump sum in addition to the $250,000 which she already had in her own name. Particularly would this be so when we bring to mind that supporting the three children whose custody was awarded to her is made less burdensome than would otherwise be the case by the fact that trust funds established for them were valued at approximately $1,000,000.

The evidence introduced in this case establishes, we believe, that the maintenance of plaintiff in the station of life to which she has become accustomed will not exceed $40,000 per year during her life expectancy, excluding from consideration marked changes in the cost of living. If it can be assumed that interest rates will continue in the future at today's levels, it follows that $1,500,000 is more than would be needed to assure this standard of living for plaintiff.

Although plaintiff did not bring assets having a value measurable in terms of money to this marriage in 1949, she did bring

to it attributes which could be considered of great material benefit to a young man trained for and about to begin a career in the business world. She had graduated from the University of Minnesota with a degree and high honors in psychology that same year. In addition to her youth and training, she brought to the marriage qualities of character which made it possible to establish a home in the community available through the years to the defendant as a symbol of stability as well as a place of abode for himself, his wife, and his three children. Apparently plaintiff cooperated fully with defendant in those social activities which were the natural incidents of his rise to social and business prominence. A son who has achieved a fruitful marriage attracts the bounty of his parents. In this sense, it can be said that plaintiff contributed to the affluence which defendant achieved between 1949 and 1967.

The record in this particular case leads us to accept the implicit conviction of the trial court that it would be neither just nor equitable to treat plaintiff's contribution to defendant's material success as being without value except in so far as it is negotiable on the market. This is not a situation where the wife failed in her duties to her husband by avoiding paid employment. There was no need for Mrs. Bollenbach to work outside of the home. Her role in the particular situation of these parties was to expend her youth and intelligence and talents in the home and with her children and in family-related activities of which her husband approved.

Mrs. Bollenbach graduated from the University of Minnesota at age 21. Had she remained single, she would have been qualified to pursue a business or professional career which by this time, had she persisted, would be of great economic value to her. She is now separated from her training by 20 years. She has had the responsibility of caring for three children who have known expensive forms of education, entertainment, food, clothing, and shelter. Her potential for adjusting to a new situation has been restricted by the expensive habits of living to which she has by

now become accustomed. It is impractical to suggest that she has or is likely to acquire earning power on the labor market adequate to satisfy the demands of the style of life enjoyed for almost 20 years. In addition to all this, business and social opportunities for a woman who has reached her fortieth birthday and has the responsibility for supervising the care and education of three teen-age children are quite different from those available to a 21-year-old college graduate with an excellent academic record. And this is particularly the case where in the meantime the wife has experienced a loss of health with attending physical and emotional problems attributable in part at least to the misconduct on the part of the husband which led to the severance of the marriage. We cannot say under these circumstances that plaintiff's share of the considerable wealth held by her husband should be limited to the amounts calculated as sufficient to preserve her present standard of living. We believe it is more equitable and just in a situation such as this (at least where it appears that the fault for the divorce rests with the husband) to divide the property between them equally to the extent that this can be done without demonstrable punitive effect on the husband.

We do not believe that adoption of the principle of equal division in this case would have a punitive effect upon defendant. From the record it appears that he has had an annual income, exclusive of returns on his investments, of $45,000. It is true that he has no assurance of continued employment. But he has extraordinary educational qualifications, having obtained a master's degree in business administration and special training in this field. His experience as a business executive, coupled with his apparent social abilities, considered in the light of the fact that he is still in his early forties, combine to suggest that his earning capacity will continue at a high level if he chooses to apply himself to business pursuits. While the record indicates a disposition on the part of defendant to be economically venturesome, this

propensity, to the extent it in fact exists, would not necessarily affect his earning potential adversely. Stated in another way, in so far as defendant's holdings are concerned, there is no reason to believe that the principle of equal division would in and of itself cause him any great personal hardship. Therefore, we do not accede to defendant's contention that application of this principle in the present case is punitive.

While we agree with defendant that the power of the court to grant alimony or division of property cannot be used for the purpose of visiting punishment or reward upon the parties, we cannot and do not accept his claim that the factor of fault should not be considered in connection with alimony or property division. In our prior decisions we have consistently made reference to the fault factor in reviewing alimony and property division awards.[6] To us it seems that the factor of fault has more application in the present situation than it would in a case where the wife's economic interest in a continued and harmonious relationship might be more limited. Plaintiff has invested a considerable part of her lifetime in this marriage. Had it continued,

---

[6] "* * * While the court may consider the comparative fault of the parties as an element in fixing the amount of alimony and division of property [citation omitted], we caution that such awards are made not as a penalty but as a substitute for the husband's duty to support his wife and should be resolved primarily upon evidence of her needs and his ability to pay." Johnston v. Johnston, 280 Minn. 81, 86, 158 N. W. (2d) 249, 254.

"Since Buerfening v. Buerfening, 23 Minn. 563, this court has recognized that the delinquency of the parties is a material element in fixing the amount of alimony and the division of property." Baskerville v. Baskerville, 246 Minn. 496, 508, 75 N. W. (2d) 762, 770.

"* * * [I]f awarding alimony is justified, the trial judge may balance prudence and sobriety on one hand and intemperance and extravagance on the other." Cloutier v. Cloutier, 261 Minn. 324, 330, 112 N. W. (2d) 347, 351. See, also, Borchert v. Borchert, 279 Minn. 16, 154 N. W. (2d) 902.

she would have enjoyed advantages difficult to measure in terms of money. She has been deprived of these prospective advantages by a course of conduct on the part of defendant inconsistent with the obligations he assumed in entering the marriage contract in 1949.

It may be conceded, as defendant's counsel claims, that the assessment of fault in the ordinary divorce action is most difficult and that the dissolution of a marriage is the result frequently of a series of circumstances so complicated as to defy accurate fault assessment. But however true that may be in the ordinary situation, we do not think that to be the case here, at least so far as we can tell from the evidence appearing in the record. As much as it is ever possible to judge such matters, this seems clearly to be a case where the marriage was undermined by the husband's failure to fulfill the obligation of fidelity inherent in the contract dissolved by this divorce. In such a situation, we deem it equitable and just for the district court to divide the husband's property equally between him and his wife so long as this can be done without subjecting the husband to hardships so severe as to be punitive in nature.

1b. We consider now the respects in which the decree is claimed to be at variance with the equal-division principle considered appropriate by the trial court.

### CONSTRUCTION EXPENSE

In assessing defendant's net worth, the trial court determined that plaintiff's share should not be made subject to any liabilities incurred by defendant pursuant to the construction of the house to be shared with his prospective bride. Defendant has pledged his assets to borrow some $300,000 for construction of the house, $240,000 of which was placed in escrow. The trial court treated this sum and the building site (worth $10,000) as assets (although the house had a projected resale value of $140,000), but subtracted from defendant's total liabilities the sum of $272,500, which was taken to represent sums paid and liabili-

ties incurred by reason of the construction.[7] We agree that defendant's premature provision for his second marriage should not affect the property rights of his first wife. However, since the assets described above (the escrow account and the lots) were created by loans which became the liabilities which the trial court deleted from defendant's balance sheet, defendant's net worth will be distorted unless the escrow and the lots are also removed as an asset from the balance sheet. If the transaction is to be overlooked for purposes of establishing defendant's net worth, both asset and liability must be deleted to avoid punitive consequences. In addition, the record indicates that the finder's fee of $20,000, which the trial court deleted from defendant's liabilities on account of the new home may have resulted from a stock transaction having no relationship to the new home. If this is true, it should not have been deleted as a liability.

## THE HOMESTEAD

We do not consider the allocation of the homestead and its contents to plaintiff unreasonable even though its net value was not credited to defendant in making an equal division of the estate. It will be necessary for plaintiff to maintain this home as a place of residence for herself and her children. The natural disposition of a person in her situation will be to preserve this home even after the children no longer live there as a place for returning. The expense necessarily incident to the maintenance of the homestead will fall on plaintiff so that in an economic sense the ownership of it will be burdensome. This being so, special treatment of the homestead and contents seems appropriate. Although he did not do so, the trial judge might have required defendant to pay the mortgage to which it was subject.

---

[7] This $272,500 consists of the $240,000 escrow account and two lots valued at $10,000 (included in the listed assets of Mr. Bollenbach) plus a $2,500 architect's fee and a $20,000 "finder's fee." These last two items do not appear as assets.

## THE ART OBJECTS

The trial court also included in defendant's net worth certain works of art valued at $91,260. A few of these, valued by defendant at $7,500, were awarded specifically to plaintiff without (so far as we can tell) specifically subtracting their value from defendant's net worth. Plaintiff, as a consequence, gets the art objects plus half their value—a result perhaps not intended. But we do not regard this relatively minor matter as a ground for reversal.

## DIMINISHED VALUES

Where property, such as common stock, having a value which may fluctuate greatly from day to day is involved, and where the market value of such property is readily ascertainable (as, for example, by reference to published stock market quotations), and where the decree of the district court authorizes or directs payment of a given percentage of the value of such property to the wife in cash, the decree should be so phrased as to permit such modification as might be required to prevent the inequities resulting from marked changes in market value of the property between the date of the decree and a timely execution of the plan of distribution contemplated by it, at least to the extent that modification is possible before the judgment and decree become final.[8] We do not believe that the trial court intended market losses to fall entirely on defendant. This would be inconsistent to a prejudicial degree with the basic principle of equal division adopted by the trial court.

## WIFE'S ASSETS

2. The trial court made his findings of fact and conclusions of law dividing defendant's property equally between the husband and wife, notwithstanding the fact that the source of his wealth was gifts from his grandmother and his parents and that plaintiff has assets in her own name, most of which were received from defendant's parents, worth as of December 1967

---

[8] Kiesow v. Kiesow, 270 Minn. 374, 133 N. W. (2d) 652.

about $250,000. Ordinarily, in such a situation, the value of all the property should be included in the total to be divided. We accede to the trial court's variance from the basic principle of division in this respect only because he also specified in his findings and conclusions, as amended, that plaintiff carry the burden of income taxes occasioned by the property distribution. Some courts have imposed this burden on the husband.[9] In some cases the wife has been required to share it.[10] The trial court, in his conclusions of law dated June 21, 1968, held that plaintiff's lump-sum award was to be decreased by one-half of the amount of any capital gains tax liability incurred upon the transfer of assets pursuant to the award. Upon motion of defendant's counsel, the conclusions of law were amended on October 4, 1968, to place upon plaintiff the entire burden of the tax liability, if any, resulting from the transfer. The trial court reasoned that an even division of the tax liability resulting from transfers pursuant to the award would place upon defendant's remaining share one-half of the tax burden of transfers to plaintiff plus the full tax burden of any taxable transfer of defendant's share then or thereafter accruing. Although it might be said that defendant should bear the entire tax burden incurred in fulfilling the award herein since his conduct has occasioned the divorce and property division, we agree with the trial court that the principle of equal division of defendant's net worth will best be served if plaintiff bears the tax liability incurred because of transfers to her pursuant to this award.

### CHILD SUPPORT

3. While we accept the lump-sum property division with qualifications, we think it is mandatory that the interests of the children be safeguarded by a clear designation of what part of the award constitutes child support. Minn. St. 518.55. The de-

---

[9] United States v. Davis, 370 U. S. 65, 82 S. Ct. 1190, 8 L. ed. (2d) 335. See, Clark, Law of Domestic Relations, § 14.12.

[10] Wahl v. Wahl, 39 Wis. (2d) 510, 159 N. W. (2d) 651.

cree should be framed in such a way as to ensure that assets designated for the support of the children will not be used for any other purpose. It will thus be necessary to determine what amount will be necessary for the support of the children, in light of the earning capacity of the gifts and trusts already established for their benefit.[11] This amount should then be placed in trust for their support.[12]

### PLAN OF DISTRIBUTION

4. Ordinarily the division of property and allowance for alimony and support should be directed according to a plan which permits payments over a period of time.[13] This method is to be preferred because it avoids the disadvantages of forced liquidation of assets, some or all of which may be pledged or otherwise encumbered. It permits more flexibility in a proper effort to minimize tax burdens occasioned by the property disposition. It extends the measure of control which can be asserted by the court with respect to alimony and support in face of changing circumstances (re-marriage, for example) likely to be experienced by the parties. Implemented by liens, trusts, or receiverships, an order directing periodic payments can reduce or

---

[11] In 1966 defendant created 4 trusts, designated respectively A, B, C, and D, for each of his three children, placing 1,000 shares of U. O. P. stock in each. The income of trusts A is distributable currently, while the income of trusts B, C, and D is to be accumulated until the beneficiary reaches age 30, 35, and 40 respectively. The total value of stock so placed in trust was $1,080,000 at the time of trial, upon which $160,000 had been borrowed to pay gift taxes, leaving a net principal of about $900,000, or $300,000 per child. As of August 29, 1967, a balance of $12,871.88 remained due on the loan secured by each trust to liquidate gift tax liability. In addition, defendant's parents have given each child 1,855 shares of U. O. P. stock pursuant to the Minnesota Uniform Gifts to Minors Act, Minn. St. c. 527.

[12] Urling v. Urling, 107 Colo. 186, 109 P. (2d) 1060; Hipple v. Hipple, 121 Kan. 495, 247 P. 650; 24 Am. Jur. (2d), Divorce and Separation, § 838.

[13] See, 27B C. J. S., Divorce, § 292 (1), p. 270.

eliminate the risk of loss of payments to be made in the future.[14] Specific considerations which militate in favor of a plan for deferred payments in this case include defendant's presence within the jurisdiction of Minnesota's courts; the location of his assets here; and the fact that defendant has been providing for the support of his wife and children without serious untoward incident since he left the family home on April 1, 1967.

On the other hand, there are reasons we consider sufficient under the circumstances of this case to justify the action taken by the trial court on the record before him when his decision was announced. The behavior of defendant in his relationship with a married woman not his wife as disclosed by the evidence would suggest a lack of the prudent judgment needed for the preservation of a substantial estate. For one thing, such conduct sometimes invites expensive litigation. The investment pattern adopted by defendant in recent years evinces a preference for risk ventures as against preservation of present assets. The use of U. O. P. stock as security for personal loans approximating $1,000,000 and the incurrence of contingent liabilities for a like amount exposed a principal source of defendant's present and future income to the hazards which result when loans cannot be paid and contingent liabilities become certain—risks to which plaintiff, charged with the upbringing of the children, should not be subjected.

Defendant's motion for amended findings and conclusions of law rejected the equal-division principle which the trial court adopted and which we affirm. As a consequence, the trial court has not as yet had opportunity to consider a proposed plan whereby one-half of defendant's assets can be transferred to plaintiff without unnecessary hardship to the defendant. While we do not think that the impossibility of a lump-sum settlement has been demonstrated on the present record, we are impressed

---

[14] See, Clark, Law of Domestic Relations, § 14.8; Annotation, 3 A. L. R. (3d) 1171; Daggett, *Division of Property upon Dissolution of Marriage,* 6 Law and Contemporary Problems 225.

by the difficulties which the execution of such a plan will impose on defendant. The trial judge in his memorandum of February 21, 1968, invited the proposal of methods for putting the principle of equal division into effect, a request which suggests to us that any plan proposed to ameliorate the problem would be given careful consideration. Tactical impediments to the presentation of an alternate plan of execution embracing the principle of equal division (such as the fear of waiver) having been eliminated by our affirmance of the trial judge's finding on this phase of the case, we believe that the interests of justice will be furthered if defendant is allowed a reasonable time, not to exceed 45 days from the date of the filing of this decision, to propose to the district court by appropriate motion a plan whereby the division ordered by the trial court can be accomplished so as to assure plaintiff her share of defendant's property without needless hardship to either party. We recognize that this directive continues the matter in an unsettled state until such a motion is presented and decided. But after careful reflection we have concluded that the likelihood that competent counsel will produce a feasible alternate plan which may be acceptable in whole or in part and which will reduce the losses which may result in the absence of such a plan justifies this procedure.

## ATTORNEYS' FEES AND EXPENSES

5. In this type of case, the amount to be allowed to the wife as attorneys' fees rests almost entirely in the discretion of the trial court.[15] Evidence should be offered to show in reasonable detail the nature of the extraordinary services rendered in cases of unusual complexity such as this one.[16] The opinions of competent disinterested experts are material but not controlling.[17]

[15] Minn. St. 518.14; Peterson v. Peterson, 274 Minn. 568, 144 N. W. (2d) 597; Ward v. Ward, 262 Minn. 249, 114 N. W. (2d) 273.

[16] Borchert v. Borchert, 279 Minn. 16, 154 N. W. (2d) 902; Hempel v. Hempel, 225 Minn. 287, 30 N. W. (2d) 594.

[17] Folmar v. Davis (Fla. App.) 108 So. (2d) 772; Granat v. Scherman, 60 N. Y. S. (2d) 677. See, Cochran v. Cochran, 93 Minn. 284, 101 N. W.

Where the assets involved are as extensive as here, it is neither reasonable nor necessary to apply the strict rules concerning allowance of attorneys' fees which control where the assets of the husband and wife are needed to provide the necessities of life to the parties and the children. In every divorce case, time and study are required to explore the causes of disaffection and the future of the children and in most of these cases the attorneys' fees allowable by the court will not be commensurate with the time involved or the responsibility assumed.[18] In a situation where family assets having initially a gross value in excess of $5,000,000 are involved, additional and extremely complicated problems occur if it becomes necessary to divide and distribute the property held by the husband. It is an area where lack of skill, care, and judgment can result in serious financial losses to everyone. The special expertise of others must be tapped. For these reasons, the allowance of substantial fees commensurate with the time, skill, and professional judgment required is justifiable though comparable compensation is not allowed when the available resources are limited.[19] At the same time, the reason for requiring a husband to bear the full burden of his wife's attorneys' fees has very limited application in a case such as this one. The reason generally expressed is that the wife, being ordinarily without funds of her own, should not be put to a disadvantage in selecting counsel with the experience and ability required to cope with the ability of the attorneys selected by her husband.[20] But a wife with ample resources in hand or in prospect is not similarly dependent on her husband for the funds needed to pay counsel. In a case such as the present one, it is unrealistic to say that the plaintiff's selection of her counsel or

179; Tracy v. Perkins-Tracy Printing Co. 278 Minn. 159, 153 N. W. (2d) 241.

[18] Burke v. Burke, 208 Minn. 1, 292 N. W. 426; Eck v. Eck, 252 Minn. 290, 90 N. W. (2d) 211.

[19] Hempel v. Hempel, *supra.*

[20] Id.

their willingness to serve would be affected by applying a rule formulated to meet the ordinary situation. We believe, therefore, that generally speaking, the full burden of attorneys' fees in a case such as this should not be placed on the husband but that allocation of the wife's attorneys' fees as between husband and wife should be governed by the same considerations which apply in making division of the husband's property. Putting this principle into effect, the attorneys' fees and expenses allowed in this case should be treated as a liability of defendant and the net assets to be distributed on a 50-50 basis should be reduced by that amount. Defendant thus pays his own attorneys' fees and 50 percent of the attorneys' fees and expenses incurred by his wife, a result we believe to be reasonable at least in this case, where it was at defendant's request and because of his behavior that this divorce action was commenced. We have some misgivings as to the amount allowed on account of attorneys' fees and expenses because of the difference between the amount granted and the amount specified as reasonable by an expert witness called by plaintiff. Although we realize that the trial court could, and apparently did, base his award upon the testimony of plaintiff's attorney, we believe that the amount awarded by the trial court as attorneys' fees and expenses of the wife should be the maximum amount chargeable against defendant in this case even though additional services may be required.

6. While a party affected by a decree directing immediate division of property in a divorce proceeding should be offered an opportunity to propose a plan of putting the division into effect which will keep the losses resulting from the transfer at a minimum, the plan proposed (or any alternative method suggested) must be one which can be adopted by the trial court in whole or in part without significantly endangering the basic objectives of the property-division decree. In the event of a future hearing on this phase of the matter, the trial court may properly consider any additional evidence which may be offered bearing on the good faith of the disclosure of assets made by the

parties; the effect of intervening market fluctuations on the value of the properties of the husband and of the wife and of their children; and any other information which may be relevant to the problem of executing a just and equitable division of property.

## FUTURE PROCEEDINGS

The decision which we have reached in this matter will require further proceedings in the district court consistent with our opinion. We do not vacate the judgment which has been entered here, being uncertain of the consequences of doing so. We believe it better that the necessary proceedings to vacate the judgment and secure amendment or alteration of the trial court's findings of fact and conclusions of law be undertaken in the district court. Accordingly, the case is remanded for further proceedings consistent with the decision. Costs and disbursements are not to be allowed either party. Minn. St. 607.01.

Affirmed in part; modified in part; and remanded for further proceedings.

MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.