**In Re the Marriage of Ann Mary LUNDE, petitioner, Respondent,**

v.

**William Raymond LUNDE, Appellant.**

**No. C9–86–1709.**

Court of Appeals of Minnesota.

June 30, 1987.

Richard D. Goff, Goff, Kaplan & Wolf, P.A., St. Paul, for respondent.

Harvey N. Jones, Hertogs, Fluegel, Sieben, Polk, Jones & LaVerdiere, P.A., Hastings, for appellant.

Heard, considered, and decided by POPOVICH, C.J., and HUSPENI and MULALLY,* JJ.

## OPINION

MULALLY, Judge.

William Raymond Lunde appeals from an amended dissolution judgment and decree and the denial of an alternative motion for amended findings or a new trial. William contends that the trial court abused its discretion in awarding Ann Mary Lunde permanent maintenance, past spousal maintenance, and attorney's fees, as well as ordering him to pay most of the marital debts. Ann seeks an award of attorney's fees on appeal. We affirm.

## FACTS

The 25 year marriage of William Raymond Lunde and Ann Mary Lunde was dissolved on November 27, 1985. The parties' four daughters were emancipated. The trial court issued findings of fact, conclusions of law, and order for judgment and decree of dissolution based upon a partial marital agreement which reserved the following for trial:

(a) final division of proceeds from sale of the parties' homestead;

(b) spousal maintenance;

(c) division of marital debts;

(d) attorney's fees.

The court had previously suspended an order that William pay temporary spousal maintenance to Ann of $1,400 per month, because William had been unemployed since May of 1985. In suspending the order, however, the court instructed William to notify Ann immediately upon accepting employment, and to provide details of his employment.

Shortly after the June hearing, William went to Colorado and sought employment. Although hired by the Stuart-James Company as a contract broker in July of 1985, William did not disclose either his employment or his income to Ann. William's income increased substantially from his previous salary of $45,000 plus commissions. He earned $20,000 in the last four months of 1985, and grossed $166,523.88 in the first six months of 1986.

The reserved items came on for trial on June 12, 1986. The court did not consider the issue of division of the proceeds from the sale of the homestead, as no proceeds were available. On July 28, 1986, the court issued amended findings of fact, conclusions of law, and order for amended judgment and decree of dissolution. The court awarded Ann spousal maintenance of $1,875 per month until her death or remarriage; delinquent support of $7,050 payable within ten days; attorney's fees of $1,800; and ordered William to pay nearly all of the

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

marital debts. The court denied William's motion for amended findings or a new trial.

## ISSUES

1. Did the trial court abuse its discretion in awarding respondent permanent maintenance in the amount of $1,875 per month?

2. Did the trial court abuse its discretion in awarding respondent past spousal maintenance?

3. Did the trial court abuse its discretion in ordering appellant to pay nearly all the marital debts?

4. Did the trial court abuse its discretion in awarding respondent attorney's fees? '

5. Is respondent entitled to an award of attorney's fees on appeal?

## ANALYSIS

### 1. *Amount and Duration of Maintenance*

Appellant challenges both the amount and the duration of the maintenance award. He does not contest that respondent is in need of assistance per Minn.Stat. § 518.-552, subd. 1 (Supp.1985); however, he argues that the maintenance award was an abuse of discretion because the sum of $1,875 per month reflects one-half of his net income at its highest point during the marriage.

Appellant cites *Kaiser v. Kaiser*, 290 Minn. 173, 186 N.W.2d 678 (1971) and *Bollenbach v. Bollenbach*, 285 Minn. 418, 175 N.W.2d 148 (1970) in support of his argument that the award of maintenance is too high, claiming that the award will allow respondent to actually improve upon her former standard of living.

These cases were both decided before the current statutory scheme. *Kaiser* involved a motion to increase alimony, child support, and the property settlement. The plaintiff did not show that her family budget exceeded the alimony and support received by defendant, but only that defendant's income had increased since the initial award of alimony. The present case involves an initial award of maintenance which was reserved for later consideration by the trial court. As stated in *Bollenbach*:

> It is axiomatic that in divorce cases the district court must be accorded a broad discretion with respect to the division of property, allowance of alimony, provision for the custody and support of the children of the parties and allowances for expenses of litigation.

285 Minn. at 426, 175 N.W.2d at 154.

 The trial court may, in its discretion, award either permanent or temporary maintenance, upon a consideration of all the relevant factors, including those enumerated in Minn.Stat. § 518.552, subd. 2. Each case must be decided on its own facts and no single statutory factor for determining the type or amount of maintenance is dispositive. *Broms v. Broms*, 353 N.W.2d 135, 138 (Minn.1984); *Erlandson v. Erlandson*, 318 N.W.2d 36, 39 (Minn.1982). The basic consideration is the financial need of the spouse receiving maintenance and the ability to meet that need balanced against the financial consideration of the spouse providing the maintenance. *Erlandson*, 318 N.W.2d at 39–40.

The statutory factors include:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to the party, and the party's ability to meet needs independently,

\* \* \* \* \* \*

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the party's age and skills, of completing education or training and becoming fully or partially self-supporting;

(c) the standard of living established during the marriage;

(d) the duration of the marriage and, in the case of a homemaker, the length of

absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished;

(e) the loss of earnings, seniority, retirement benefits, and other employment opportunities forgone by the spouse seeking spousal maintenance;

(f) the age, and the physical and emotional condition of the spouse seeking maintenance;

(g) the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance; and

(h) the contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker or in furtherance of the other party's employment or business.

Minn.Stat. § 518.552, subd. 2 (Supp.1985).

■ The trial court made detailed findings on each factor contained in the statute. Specifically, the court found that Ann lacked sufficient property, including marital property, to provide for her reasonable needs, considering the standard of living established during the marriage, and was unable to provide adequate self-support through appropriate employment. The court found that the parties enjoyed a very high standard of living during the marriage. They lived in a lovely home, belonged to a country club, and traveled extensively. The court found that Ann earned about $640 per month as a department store clerk in Hastings, Minnesota. She lives in an apartment and has reasonable monthly expenses of $2,500.

In contrast, the court found that William earns an average of $27,754 per month as a contract broker, with additional investment income of about $6,800, and approximately $7,500 from miscellaneous sources. He is currently purchasing a $249,000 home in Denver, Colorado, and a $118,000 town-house in Breckenridge, Colorado. He leases a 1985 Pontiac automobile and has recently purchased a 1986 Cadillac automobile for $23,600.

The court found that William's necessary monthly living and business expenses are $8,906, including advances of $2,500 which are repaid to him. He will have an additional business expense of 15 percent of gross commissions in order to employ a consultant, commencing in July of 1986. The court stated that William owes $2,800 on a personal credit card, $10,000 on a note, and $6,500 on a letter of credit. Finally, the court found it unlikely that William's current gross income of approximately $27,000 per month would continue at that same high level.

The court concluded that William has the ability to provide for his own support and to contribute to Ann's support. The award of $1,875 per month brings Ann's monthly income to $2,515. We hold that the trial court's award of maintenance in the amount of $1,875 per month was not an abuse of discretion.

■ Likewise, we find no abuse of discretion in the duration of the award. Appellant argues that respondent submitted no evidence to support that she lost earnings, seniority, retirement benefits, or other employment opportunities, and thus, that an award of permanent maintenance is not justified.

The court found:

Ann has little or no training for the job market. She has no marketable skills, and hence, at present has no capacity to increase her earnings. She does not have the ability or the wherewithal to attain skills that would enable her to earn more than a minimum wage. Because of these factors, she is unlikely to obtain employment that would provide more than she is earning at her current employment.

During almost the entire 25 year marriage, Ann was a full time homemaker and the primary caretaker of the parties'

four daughters who are now adults. As a result, her education, skills, and experience have become outmoded, and her earning capacity has become permanently diminished. Due to her absence from the job market, she has foregone many employment opportunities and has lost considerable income and benefits.

These findings are supported by the evidence. The award of permanent maintenance was proper.

Appellant argues that although respondent may have the ability to become self-supporting in the future, the award of maintenance is so generous that it will discourage her from obtaining the necessary training or education to achieve self-sufficiency. This assertion ignores the reality that lowering the award could place respondent in a position where she can ill afford further education or training. *Cf. Krick v. Krick*, 349 N.W.2d 350 (Minn.Ct. App.1984) (court ordered increase of temporary maintenance to permit appellant to obtain necessary training and education). Moreover, if the situation were to change, appellant may move to modify the maintenance award.

## 2. *Past Maintenance*

■ Appellant contends that the court erred in awarding a sum for delinquent maintenance, in light of other money received by respondent, to wit—a portion of appellant's profit sharing plan and moving expenses. Appellant also claims that the award was inequitable because respondent failed to maintain the mortgage payments on the parties' homestead, which resulted in its forced sale during the pendency of the proceedings.

The trial court had suspended its order requiring that appellant pay temporary maintenance. He was, however, ordered to inform respondent upon accepting employment and disclose his salary to her. He failed to do so, and the court, fully apprised of all the pertinent factors, found that he had failed to pay respondent a reasonable sum for maintenance during this time. We

cannot say that the court abused its discretion in awarding past maintenance in the amount of $7,050.

## 3. *Marital Debts*

■ Appellant claims that the trial court erred in ordering him to pay marital debts of the parties. The court ordered appellant to pay nearly all of the debts, except amounts owed to J.B. Hudson's and Perman's. In view of the disparate financial status of the parties, this determination was not an abuse of discretion. Moreover, the court ordered that any income from the parties' oil and gas investments be first applied to the current outstanding indebtedness until the debts are paid in full.

## 4. *Attorney's Fees*

■ Appellant contends that the trial court abused its discretion in awarding respondent attorney's fees. Minn.Stat. § 518.14 (1984) allows the trial court to require a party to pay the reasonable costs, disbursements, and attorney's fees of the other party. The determination of the trial court on this issue will not be changed absent an abuse of discretion. *Deliduka v. Deliduka*, 347 N.W.2d 52, 57 (Minn.Ct.App. 1984). Respondent had incurred attorney's fees up to the time of trial in the amount of $5,428.50. Appellant had paid $500 toward these fees and costs. The trial court awarded Ann $1,800 in fees. We find no abuse of discretion.

■ Respondent requests an award of attorney's fees to partially reimburse her for this appeal. This court may award fees on appeal in a dissolution case. *See Faus v. Faus*, 319 N.W.2d 408 (Minn.1982). We hold that respondent is entitled to an award of attorney's fees in the amount of $400.

## DECISION

The trial court did not abuse its discretion in awarding respondent $1,875 per month permanent maintenance, $7,050 past maintenance, ordering appellant to pay most of the marital debts, and allowing

respondent $1,800 in attorney's fees. Respondent is entitled to an award of attorney's fees on appeal.

Affirmed.