HOOTEN, Judge
(concurring in part, dissenting in part)
Because the majority’s decision ignores the plain language of Minn. Stat. § 519.11 (2016) and applies a standard that creates a level of uncertainty that is contrary to Minnesota’s long history of public policy favoring the validity of antenuptial agreements, McKee-Johnson v. Johnson, 444 N.W.2d 259, 265 (Minn. 1989), and because the district court erred in determining that husband dissipated assets, I respectfully dissent in part.
I.
McKee-Johnson instructs that the validity of an antenuptial agreement executed on or after August 1, 1979, requires “a review of both the procedural and substantive fairness of the contract.” 444 N.W.2d at 265. Generally, when the legislature acts to modify the common law, a court interpreting the resulting statute should not assume that the legislature intended to modify the common law “any further than that which is expressly declared or clearly indicated.” Do v. Am. Family Mut. Ins. Co., 779 N.W.2d 853, 858 (Minn. 2010) (quotation omitted). After an extensive review of the legislative history of section 519.11, McKee-Johnson determined that the statute addresses only procedural fairness. 444 N.W.2d at 264 (“The purpose of the bill was codification of procedural fairness requirements precedent to the execution of a valid antenuptial agreement.”). As recognized by the court in McKee-Johnson, the statute does not address substantive fairness of the terms of an antenuptial agreement, which must be analyzed under common law principles of contract.[1]
“The goal of statutory interpretation is to effectuate the intent of the [[legislature.” Staab v. Diocese of St. Cloud, 853 N.W.2d 713, 716 (Minn. 2014). If that intent is clear from the unambiguous language of the statute, we apply the statute according to its plain meaning. Id. at 716- *57 17. In the absence of ambiguity, “statutory construction is neither necessary nor permitted.” Am. Tower, L.P. v. City of Grant, 636 N.W.2d 309, 312 (Minn. 2001). Appellate courts may not “rewrite a statute under the guise of statutory interpretation.” Laase v. 2007 Chevrolet Tahoe, 776 N.W.2d 431, 438 (Minn. 2009).
The first sentence of Minn. Stat. § 519.11, subd. 1, provides that an ante-nuptial agreement executed on or after August 1,1979, “shall be valid and enforceable if there is ... a full and fair disclosure of the earnings and property of each party” and “the parties have had an opportunity to consult with legal counsel of their own choice.” There is no language in this first sentence that limits its application to antenuptial agreements governing non-marital property or excludes antenuptial agreements governing marital property from the scope of the statute.
Rather, the expansive nature of the statute—and its application to all antenuptial agreements—is further illustrated by the third sentence of the statute, which provides, “This section shall not he construed to make invalid or unenforceable any antenuptial agreement or settlement made and executed in conformity with this section because the agreement or settlement covers or includes marital property, if the agreement or settlement would be valid and enforceable without regard to this section.” (Emphasis added). As indicated by the emphasized language in the first clause, this sentence operates as a savings provision that a court should only turn to in circumstances where the statute would otherwise invalidate an antenuptial agreement—when the circumstances underlying the execution of the agreement fail to conform to the disclosure-and-access-to-counsel standard in the first sentence. As is clear from the plain .language of the statute, when the statutory requirements of procedural fairness are not met, a court must apply the- common law to determine the procedural fairness of an antenuptial agreement.
Nothing in McKee-Johnson undermines this reading of the plain language of the statute. In order to understand the supreme court’s decision in McKee-Johnson, it must be read in context with this court’s decision in that. ease. In McKee-Johnson, this court held that section 519.11 operated to void provisions of antenuptial agreements addressing marital property. 429 N.W.2d 689, 693-94 (Minn. App. 1988). The supreme court rejected that legal premise and vacated this court’s opinion. 444 N.W.2d at 261, 264-65. In so doing, the supreme court highlighted the public policy in favor of enforcement of antenuptial agreements, including agreements containing provisions relating to marital property, both under the common law and in the legislative history of section 519.11, Id. at 264-65. In reaction to this court’s opinion, the supreme court answered the question of whether the provisions of an antenuptial agreement relating to marital property are void as a .matter of law, but did not directly address the question presented in this ease: whether the procedural fairness of provisions relating to marital property are evaluated under the disclosure-and-aecess-to-counsel standard provided by the statute or under the common, law.
The supreme court did not decide this issue because it believed that the factors to be evaluated under the statute and under the common law were “substantially identical” and that the statute embodied the common law.[2] Id. at 265. In determining *58 that the provisions of the antenuptial agreement governing marital property were executed in a manner that was procedurally fair, the supreme court considered whether there was full financial disclosure between the parties and whether the parties each had access to advice from independent counsel, the same factors that are provided by section 519.11. Id. at 265-66. Importantly, contrary to the position of the majority, the supreme court, by applying the two statutory factors, did not hold that only the common law applies when determining whether the provisions of an antenuptial agreement relating to marital property are executed in a procedurally fair manner.
The majority notes that the supreme court stated that “to determine whether the provisions of this contract relating to ‘after acquired’ property are valid and enforceable, we must look to our common law for guidance.” Id. at 265. The majority is mistaken in believing that this quote reflects the holding of the case; if this were the holding, the supreme court would not have addressed the issue of whether the criteria for evaluating procedural fairness were identical under the statute and the common law. Two of the supreme court’s syllabi points set forth its holding in McKee-Johnson: (1) “[provisions in an antenuptial agreement [are] not void and unenforceable as a matter of law solely because they relate[] to distribution of marital property upon termination of the marriage”; and (2) “[an] [a]ntenuptial agreement voluntarily entered into by competent adult parties following full financial disclosure and opportunity to consult with independent counsel [meets] common law and statutory standards of procedural fairness.” Id. at 260.
The quote relied on by the majority must be read within the context of the issue that was presented to the court, i.e., whether the provisions of an antenuptial agreement entered into after the enactment of section 519.11 purporting to address marital property were void as a matter of law. In response to that issue, the supreme court explained immediately following the quote that such antenuptial agreements were valid even under the common law, as long as they were procedurally fair. Id. at 265.
The majority’s reading of section 519.11 and the supreme court’s decision in McKee-Johnson, requiring that the procedural fairness of provisions of an antenup-tial agreement relating to marital property be evaluated under the common law, implicates three possible analyses. One possible analysis is that the statute governs non-marital property, while the multifactor balancing test from the common law as provided in In re Estate of Kinney, 733 N.W.2d 118, 124 (Minn. 2007), governs marital property, creating two separate standards governing procedural fairness for a court to apply if the agreement contains both marital and nonmarital property. Under such an analysis, it would be possible for a court, evaluating the same circumstances surrounding the creation and execution of the same agreement, to determine that a spouse had been afforded procedural fairness regarding the provisions of the agreement relating to nonmar-ital property but not those relating to marital property, or vice versa. This standard *59 for determining procedural fairness could lead to illogical results, and would be unnecessarily confusing and unworkable.
Another possible analysis indicated by the majority’s interpretation of section 519.11 and ■ McKee-Johnson is that the common law applies in evaluating the procedural fairness of the agreement, regardless of whether the agreement addresses marital property, nonmarital property, or both. However, such an analysis would render the statute’s decree that an ante-nuptial contract “shall be valid” as long as there was disclosure and access to counsel meaningless, eviscerating the statute and violating the statutory provision that in determining legislative intent courts are to presume that the legislature intended “the entire statute to be effective and certain.” Minn. Stat. § 645.17(2) (2016).
This analysis would also be an absurd reading of McKee-Johnson,. as that decision did not address nonmarital property. 444 N.W.2d at 262 n.2. The McKee-Johnson court noted that “[t]he thrust of the bill [that became section 519.11] was ... to make it more difficult to subsequently challenge the validity of an antenuptial agreement covering nonmarital property.” [3] IcL at 264. There is nothing in McKee-Johnson that dictates the application of the common law to all antenuptial agreements, even those containing only provisions addressing nonmarital property, to the exclusion of the application of the statute. In fact, as indicated by the McKee-Johnson court’s examination of the legislative history, the legislature specifically intended that section 519.11 govern the procedural fairness analysis of agreements pertaining to nonmarital property. Id.
A third possible analysis, apparently adopted by the majority, is that the common law applies to all of the provisions in an antenuptial agreement if the agreement contains any provision addressing marital property. However, this analysis suffers from many of the same flaws as the previous analyses. Such an analysis rewrites the statute to say that “an antenuptial contract that does not contain any provisions addressing marital property” shall be valid if the disclosure-and-access-to-counsel standard is met. As described above, nothing in McKee-Johnson indicates that the supreme court interpreted the statute to require that the common law be consulted to determine the procedural fairness of any antenuptial agreement addressing marital property, much less provisions of an ante-nuptial agreement pertaining to nonmari-tal property. Furthermore, this analysis would also eviscerate section 519.11, as the statute would only apply to antenuptial agreements solely addressing nonmarital property. Such agreements are likely uncommon, given that nonmarital property owned by one spouse is generally not awarded to the other spouse. See Minn. Stat. § 518.58, subd. 1, 2 (2016) (providing that, while a district court “shall make a just and equitable division of the marital property,” a district court may only apportion up to one-half of a spouse’s nonmarital property to the other spouse if the spouse’s resources or property, including the spouse’s portion of the marital property, “are so inadequate as to work an unfair hardship”).
Any of the analyses implicated by the majority’s reading of the statute and McKee-Johnson would invite parties to litigate every antenuptial agreement ad *60 dressing marital property, in contravention of the legislature’s intent in enacting the statute. As stated above, “[t]he goal of statutory interpretation is to effectuate the intent of the [ljegislature.” Staab, 853 N.W.2d at 716. Given the long history of public policy in Minnesota favoring the enforceability of antenuptial agreements covering both marital and nonmarital property,[4] I cannot support an interpretation of section 519.11 that implies the legislature intended to create this level of uncertainty for attorneys, courts, and most importantly, couples preparing for marriage.
The statutory interpretation adopted by the majority effectively eviscerates or rewrites the first sentence of the statute. Because we may not “rewrite a statute under the guise of statutory interpretation,” Laase, 776 N.W.2d at 438, I would apply the statute as written. As dictated by the plain language of the statute, I would apply the procedural fairness standard in the first sentence of section 519.11 to all antenuptial agreements executed on or after August 1, 1979. I would only resort to the common law when the third sentence of the statute is invoked—when application of the first sentence would otherwise invalidate an agreement.
Applying the statutory procedural fairness standard to all antenuptial agreements, regardless of the type of property covered, affords a higher degree of certainty to both parties seeking to structure then- financial affairs in advance of their marriage and the attorneys who advise them. See Minn. Stat. § 645.17 (2) (providing that courts should assume legislature intends statutes to be “effective and certain”). It also offers a much easier standard for courts to apply in evaluating the procedural fairness of antenuptial agreements and discourages speculative litigation. Finally, this interpretation avoids the possibility of unreasonable and inconsistent results, such as would result from the application of two different standards regarding the procedural fairness of an antenuptial agreement. See id. (1) (2016) (providing that courts should assume legislature does not intend results that are unreasonable).
Because the district court considered factors other than those required by section 519.11 and the undisputed facts of this case demonstrate that the antenuptial agreement meets the requirements of section 519.11, I would reverse the district court’s determination that this antenuptial agreement was executed in a procedurally unfair manner. Further, because substantive fairness of an antenuptial agreement must be evaluated based on the terms of the agreement and the district court did not consider the terms when it found the agreement was substantively unfair, I would reverse the district court’s substantive fairness determination and remand with instructions to evaluate the agreement’s terms and enforce the terms that are substantively fair.
II.
I also cannot concur with the majority’s decision to affirm the district court’s equitable division of property because the district court erred in determining that husband dissipated assets during the divorce proceedings.
*61 Minn. Stat. § 518.58, subd. la (2016) provides that:
If the court finds that a party to a marriage, without consent of the other party, has in contemplation of commencing, or during the pendency of, the current dissolution ... disposed of marital assets except in the usual course of business or for the necessities of life, the court shall compensate the other party by placing both parties in the same position that they would have been in had the ... disposal not occurred.
Here, the district court made a factual finding that in 2012 husband “liquidated his crop inventory,” which was worth approximately $1.5 million, and with the proceeds “paid off his operating loan, and converted the balance of the proceeds to new equipment, which he used to farm the same property with his father being the farmer of record.” Based on this finding, the district court concluded that the liquidation of stored crops was a dissipation of marital assets and that wife was “entitled to half of the fraudulently transferred or disposed of grain sales, or $750,000, as a fair and equitable division of the marital property of the parties, and as compensation ... for [husband’s] diversion of marital assets.”
We have defined dissipation as “frivolous, unjustified spending of marital assets.” Volesky v. Volesky, 412 N.W.2d 750, 752 (Minn. App. 1987). The statute exempts spending “in the usual course of business.” Minn. Stat. § 518.58, subd. la. Thus, to the extent that husband used the proceeds from the sales of an asset from the farm operation to pay off the liabilities of the farm operation or to purchase equipment or farm inputs[5] owned by the farm operation, I see this as a zero-sum transaction, which has no effect on the overall net value of the farm operation. See Bollenbach v. Bollenbach, 285 Minn. 418, 435, 175 N.W.2d 148, 159 (1970) (“If the transaction is to be overlooked for purposes of establishing defendant’s net worth, both asset and liability must be deleted to avoid punitive consequences.”).
However, the district court also made findings of fact that husband used some of the proceeds of the 2012 crop liquidation to purchase farm inputs that were then provided to his father without compensation. While use of the proceeds of the 2012 crop liquidation that were used to pay legitimate farm debts or used to purchase equipment owned or farm inputs utilized by the farm operation was not a dissipation of marital assets, to the extent that those proceeds were used to purchase farm inputs that were expended by appellant to farm his father’s land without compensation, those expenditures were a dissipation of marital assets.
While it is true that a district court is not required to be exact in its valuation of the marital estate, Johnson v. Johnson, 277 N.W.2d 208, 211 (Minn. 1979), it is impossible to determine from the district court’s findings what effect its error in determining dissipation had on the valuation of the marital estate. Therefore, even if I agreed with the majority that the antenuptial agreement was invalid, I would nevertheless reverse the district court’s property division and remand for a recalculation and equitable division of the marital estate.
III.
Assuming arguendo that the district court properly determined that the ante- *62 nuptial agreement is invalid, I concur with the majority’s conclusions regarding spousal maintenance. Regardless of the validity of the antenuptial agreement, I concur with the majority’s conclusion regarding need-based attorney fees.

. The supreme court specifically identified unconscionability as the appropriate standard for substantive fairness review, determining that such a standard "affords proper weight to the freedom of contract concept by indication that mere or slight unfairness or onesid-edness is insufficient to justify invalidation.” Id. at 267 n.7.

. Unlike in the instant case, where there is no dispute that wife consulted with independent counsel of her own choosing, there was a question as to whether the wife in McKee- *58 Johnson had "an opportunity” to consult with independent counsel. By deciding that there was no difference in the statutory and common law requirements of procedural fairness, the supreme court, by simply holding that she waived her opportunity to consult with counsel, did not need to address the issue of whether it was proceeding under the first sentence or the third sentence of the statute in determining whether the antenuptial agreement was procedurally fair.

. Though recognizing that part of the "thrust of the bill” related to nonmarital property, the supreme court "[found] nothing in the legislative history which indicates that the statute was hostile towards agreements which contained provisions relative to the disposition of marital property.” Id. at 264.

. See McKee-Johnson, 444 N.W.2d at 265 (stating, after extensive review of cases, that "premarital agreements, if fairly arrived at, following full disclosure of financial condition, and with opportunity to consult independently with counsel, have been favored in the common law of Minnesota—even though marital property was included within their scope”).

. According to wife’s expert, farm inputs include seeds, fertilizer, pesticides, and other consumable products that are essential in any farm operation.