In re the Marriage of June Marie **MUSIELEWICZ**, Petitioner, Appellant,

v.

Leo George **MUSIELEWICZ**, Respondent.

No. C5–86–797.

Court of Appeals of Minnesota.

Jan. 20, 1987.

Review Denied March 25, 1987.

---

Gregory K. Larson, Valen & Larson, Little Falls, for appellant.

Peter Vogel, Brigid M. Fitzgerald, Rosenmeier & Anderson, Little Falls, for respondent.

Heard by WOZNIAK, P.J., and NIERENGARTEN and RANDALL, JJ. and considered and decided by the court en banc, consisting of POPOVICH, C.J., and PARKER, FOLEY, WOZNIAK, SEDGWICK, LANSING, HUSPENI, FORSBERG, LESLIE, NIERENGARTEN, RANDALL and CRIPPEN, JJ.

## OPINION

SEDGWICK, Judge.

Upon dissolution of Leo and June Musielewicz's marriage of 28 years, Leo was ordered to pay June $6,000 for her share of the homestead, and maintenance of $100 per month for two years. June appeals, claiming the awards are inadequate and that the maintenance award should be permanent.

## FACTS

At the time of dissolution, the parties had six children, all of whom were over eighteen and no longer living at home. The parties' personal property totaled less than $5,000 and its division is not contested. Real property included the homestead with an appraised value of $20,000 and two empty lots valued at $800 apiece which secured a $7,000 loan from Leo's brother.

The house in Flensberg, an extremely depressed housing market, was in need of extensive repair and redecorating. In 1985, only two homes were sold, one for $16,250, the other for $11,500. Both of these houses were in better condition than the Musielewicz's home.

Leo is 55 years old and is employed full-time at Larsen Boats. He has no savings and no retirement or pension. His take-home pay is about $1,000 per month. His monthly expenses are approximately $700, in addition to which he provides monthly financial aid of $200 to their adult children for tuition, medical, and miscellaneous expenses.

June is a 48 year old high school graduate who was a homemaker throughout the marriage. She recently completed a two-year program in child development at Brainerd Community College which qualifies her to work in a group home or child care center. She is in good health and is presently employed part-time as a nursing assistant, working about 20 hours a week earning $4.30 an hour. June's estimated expenses of $450 a month include subsidized housing. The vocational counselor testified June may have difficulty finding full-time, permanent employment, but that her present part-time position increases her employability by establishing a current work history.

The trial court found June was able-bodied and capable of full-time employment, and that the value of the homestead was difficult to assess because of the home's dilapidated condition and the virtually non-existent housing market in Flensburg. The court found that Leo contributed substantially to the support and education of the adult children and that they would continue to need his help and support.

The trial court allowed Leo to purchase June's interest in the home for $6,000 and required him to assume responsibility for the debt owed his brother and the real estate taxes. The parties were ordered to deed the vacant lots to Leo's brother in partial payment for the debt owed. Leo was ordered to pay June maintenance of $100 per month for two years. June appeals the property settlement and maintenance award.

## ISSUES

1. Did the court abuse its discretion in the property settlement?

2. Did the trial court abuse its discretion in the amount of maintenance awarded?

3. Did the trial court err in awarding temporary maintenance rather than permanent maintenance?

## ANALYSIS

1. Property Division

■ June claims the trial court abused its discretion in awarding her less than half the market value of the homestead, which had been estimated at $20,000. The trial court has broad discretion in valuation and division of property and should be affirmed if the record is clear, the facts are not seriously disputed, and there is a reasonable basis for the trial court's decision. *Kreidler v. Kreidler*, 348 N.W.2d 780, 784 (Minn.Ct.App.1984). The court is required to be equitable in its division of marital property. Minn.Stat. § 518.58 (1984). Because of the poor marketability of their home, the payment of $6,000 to June for her interest in the homestead is not an abuse of discretion.

■ There is some question on the enforceability of the debt repayment to the brother but Leo affirmed his moral obligation for the debt and an intent to repay it. The court has broad discretion in distributing liabilities. *Kreidler*, 348 N.W.2d

at 784. The transfer of the property to Leo's brother was in partial satisfaction of marital debts and was within the court's discretion.

### 2. Maintenance.

The standard for review of a maintenance award is whether the trial court has abused its discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (1982). Minn. Stat. § 518.552, subd. 1, sets forth the criteria to be applied by the court in determining whether to grant maintenance. Once it is determined that maintenance is appropriate, the court must consider the following factors in determining the amount and duration of the award:

The maintenance order shall be in amounts and for periods of time, either temporary or permanent, as the court deems just, without regard to marital misconduct, and after considering all relevant factors including:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to the party, and the party's ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the party's age and skills, of completing education or training and becoming fully or partially self-supporting;

(c) the standard of living established during the marriage;

(d) the duration of the marriage and, in the case of a homemaker, the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished;

(e) the loss of earnings, seniority, retirement benefits, and other employment opportunities foregone by the spouse seeking spousal maintenance;

(f) the age, and the physical and emotional condition of the spouse seeking maintenance;

(g) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(h) the contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker or in furtherance of the other party's employment or business.

Minn.Stat. § 518.552, subd. 2 (Supp.1985). It is evident from the record that June has minimal funds with which to meet her financial needs. At the time of trial she was working about 20 hours a week and earning $4.35 an hour for a monthly income of $348. There is no testimony that full time work, or better pay, is available to her, and there is no support for the trial court's finding that she can be self supporting. Her only other source of funds is the $6,000 awarded as her share of the homestead. The trial court found that Leo had a net income of $1,000 per month.

The trial court made no findings on the factors in Minn.Stat. § 518.552, subd. 2. The court noted that Leo contributed to the educational needs of the couple's children. Leo's desire to assist his children is commendable and understandable. However, the needs of adult children do not take precedence over the needs of their mother. The court must address the factors in Minn.Stat. § 518.552, subd. 2(a)–(h) in determining an adequate amount of maintenance. The statutory factors do not limit the court to an amount which barely meets this mother's subsistence needs. The court must balance the needs of the spouse requesting support with the ability of the other spouse to provide maintenance. *Torkelsen v. Torkelsen*, 373 N.W.2d 630, 631–32 (Minn.Ct.App.1985). The trial court must fairly determine maintenance without considering the needs of the adult children in setting the amount of maintenance.

The trial court awarded maintenance for only two years. The judge relied on the fact that June was healthy, had some training and had already found part-time employment. However, the only evidence presented at trial indicated that a 48 year old person with little job history would have a difficult time securing full time employment. Minn.Stat. §. 518.552, subd. 3 (Supp.1985), provides:

> Nothing in this section shall be construed to favor a temporary award of maintenance over a permanent award, where the factors under subdivision 2 justify a permanent award.

> Where there is some uncertainty as to the necessity of a permanent award, the court shall order a permanent award leaving its order open for later modification.

In this case one cannot say with assurance that a permanent award is unnecessary. It may be a long time before June is able to meet her minimal needs without assistance. As a matter of law, on this record, the trial court is required to make the maintenance award permanent, leaving the burden with Leo to seek any future decrease or termination of maintenance justified by a substantial change in the circumstances of either party.

### DECISION

The trial court's findings are insufficient to show that all relevant factors were considered in determining the amount of maintenance. We remand for additional findings and an award consistent with the evidence, excluding consideration of the needs of adult children. Because the need for permanent maintenance is uncertain, the award shall be permanent with the court retaining jurisdiction for later modification.

Affirmed in part, reversed in part, and remanded.

POPOVICH, C.J., and NIERENGARTEN, RANDALL and WOZNIAK, JJ., dissent.

NIERENGARTEN, Judge (dissenting).

I respectfully dissent. The evidence established the parties were relatively debt-free. There were no minor children at home. Consequently, both June and Leo could concentrate on their own needs. Three of the children are in some type of post-high school education program and Leo contributed $200 monthly toward their achieving that goal, when, it seems to me, he could have reserved that $200 for other minimal needs of his own. In his list of expenses, he indicated only $20 per month for miscellaneous expenses, $25 per month clothing, and perhaps most significantly, nothing was budgeted for retirement purposes. Leo is 55 years old and has no retirement fund, no pension plan or savings account and did not include this in his budget. In addition, I note that payment of $6,000 to June for her interest in the home will impose an unbudgeted expense. Granted, that while "the needs of adult children do not take precedence over the needs of the mother," there is no showing by the majority that a remand would require a different distribution of funds than that already ordered by the court. While it is true June has minimal funds with which to meet her financial needs, it is also glaringly apparent that Leo is using $200 for his children's benefit that he could have well used for his own financial needs.

It appears the trial court has already addressed the Minn.Stat. 518.552 factors in determining an adequate amount of maintenance. The court's findings and memorandum clearly reflect consideration of the parties' age, health and training. Consideration of June's contribution is shown in the 50–50 division of the only asset, the family home. The court then balanced the needs of June with the ability of Leo to provide maintenance. Spousal maintenance is not a right and is granted at the trial court's discretion. *Cooper v. Cooper,* 298 Minn. 247, 214 N.W.2d 682 (1974). The Minnesota Supreme Court recognizes that there are occasions when an appellate court can find support for the trial court's decision by independent review of the record. *Moylan v. Moylan,* 384 N.W.2d 859, 865

(Minn.1986). The record must indicate that the trial court considered the required factors. *Id.* The trial court in this case did so.

June is healthy, has some education and job skills, and found part-time work without too much difficulty. In light of Leo's income of $1,000 per month and expenses of $700 plus $200 for the education of the children, or whatever other necessary living expenses which the record indicates he certainly could have claimed, it was not an abuse of discretion to award maintenance of only $100 per month.

Nothing in Minn.Stat. 518.552, subd. 3 (Supp.1985) mandates, under these facts, a permanent award. The court evidently harbored no uncertainty as to the necessity of a permanent award, and the record does not require such an award.

We ought to do more than just pay lip service to the discretionary power that rests in a trial court. Here the record reflects the trial court's consideration of the necessary factors and supports the trial court's decision. We in turn ought to support that decision and affirm.

RANDALL, Judge, (dissenting).

I respectfully dissent and would affirm the trial court on all issues. I agree with the majority that the trial court improperly considered the $200 respondent contributed toward his adult children's education as a reduction of resources available from which to pay maintenance. However, even with that $200 added back into respondent's disposable income, I find the award of $100 a month maintenance for a person making approximately $1000 a month easily within the discretion accorded a trial court on maintenance issues.

The majority holds that the trial court failed to consider the criteria of Minn.Stat. § 518.552, subd. 2 (Supp.1985) in determining the amount of maintenance. The statute requires consideration of these factors. Although the findings here are sparse, based on the total record it is evident that the court considered, as best it could from the evidence presented, the relevant statutory factors. Evidence showed that appellant recently completed an educational program in child development and was employed in that field part time. The vocational counsellor testified that appellant's employability will improve once she has established a work history. Evidence showed appellant's combined income from employment and maintenance, approximately $450 per month, is sufficient to meet her monthly expenses.

It is axiomatic that the trial court is accorded broad discretion with respect to the award of maintenance. *Bollenbach v. Bollenbach,* 285 Minn. 418, 175 N.W.2d 148 (1970). This court must affirm the trial court's decision if the decision has an acceptable basis in fact and in principle. *Id.* at 426–27, 175 N.W.2d at 154.

On the issue of temporary versus maintenance, the majority holds that, *as a matter of law,* this record requires reversal of the grant of "temporary" maintenance and implementation of a grant of permanent maintenance. The majority finds "uncertainty." Then the majority states that "one cannot say with assurance that a permanent award is unnecessary." The majority cites no case law or statute as authority for that statement, and there is none.

The statute states,

[w]here there is *some uncertainty* as to the necessity of a permanent award, the court shall order a permanent award * *.

Here, the trial judge was not uncertain. He was clear that a temporary award was appropriate under the circumstances and facts presented in evidence. The vocational counsellor testified that, once appellant established a work history, her employability would be improved. The court awarded temporary maintenance to help her reach that point. This is not an abuse of discretion.

Given our standard of review, and the broad discretion given a trial court in awarding maintenance, I find no error.

POPOVICH, Chief Judge (dissenting).

I respectfully dissent and concur in the dissents of Judge Nierengarten and Judge Randall.

In my opinion, the majority is substituting its own judgment for that of the trial court. The test is not what a reviewing court would have done had it been the trial court, but whether the trial court's decision has an acceptable basis in fact and principle.

WOZNIAK, Judge (dissenting).

I concur in the dissent of Judge Randall.