**In re the Marriage of Nancy Alto REIF, petitioner, Appellant,**

v.

**John William REIF, Respondent.**

**No. C6–88–117.**

Court of Appeals of Minnesota.

July 12, 1988.

Michael K. Kearney, Grand Rapids, for petitioner, appellant.

Harry R. Chalupsky, Grand Rapids, for respondent.

Considered and decided by LANSING, P.J., and RANDALL and KALITOWSKI, JJ., without oral argument.

## OPINION

LANSING, Judge.

In a prior appeal, this court determined that Nancy Reif was entitled to increased

maintenance as a matter of law. *Reif v. Reif,* 410 N.W.2d 414, 416 (Minn.Ct.App. 1987). On remand, the trial court made additional findings and increased the award from $400 to $600 per month. Nancy Reif appeals.

## FACTS

The parties' 23–year marriage was dissolved in January 1987. Their stipulation, which covered all issues except maintenance and attorneys' fees, provided that John Reif would have custody of their two minor children, now ages 14 and 10, and pay Nancy Reif $16,200 for her interest in the homestead, and that other assets would be divided equally.

At the time of the dissolution, Nancy Reif was working toward a nursing degree which she expected to complete in three years at age 46. She had incurred $5,000 in student loans and borrowed $2,000 from friends and relatives since the separation. Her prior working experience was limited to waitressing at minimum wage before she married, one school year as a teacher's aide earning $400 a year, and a part-time bookkeeping job for ten hours a month at $5.00/hour. She testified that she had been unable to find a bookkeeping job, and that her 17–credit courseload and daily commute between Grand Rapids and Duluth restricted her employment opportunities. She accordingly requested temporary maintenance of $1,400/month until she completed her degree, or in the alternative, permanent maintenance in a reasonable amount.

John Reif submitted a monthly budget which indicated a net income of $3,125 and expenses of $2,700 per month for himself and the two minor children. Also included in the budget was a $70/month payment on a student loan on which one of the parties' adult children had defaulted, and approximately $400/month in payments on a loan he had taken in order to pay Nancy Reif's interest in the homestead. Aside from remarking in her testimony that John Reif's claimed expenses of $400 for food and $100 for personal entertainment were a little high, Nancy Reif did not challenge this budget. Nancy Reif's submitted expenses of $1,434/month similarly were not challenged.

The trial court found that Nancy Reif had reasonable monthly expenses of $1,800, and John Reif had reasonable monthly expenses of $2,000. It awarded Nancy Reif maintenance of $400 per month, and she appealed.

While the appeal was pending, John Reif moved the trial court for an order amending and/or clarifying its findings on the ground that "careful reading of the transcript and Findings as to the reasonable expenses of the parties do not correspond to the evidence and otherwise are not clear." Specifically, John Reif wanted the court to address whether Nancy Reif's expenses were $1,800/month in light of the fact that she only claimed $1,400/month, and whether the finding that John Reif's expenses were $2,000/month took into consideration the $400 per month it cost him to finance Nancy Reif's property settlement.

The trial court recognized that John Reif's motion was not timely under Minn.R. Civ.P. 59.03 and 52.02, but stated that "on a reading of the Findings of Fact and the Court's recall of the evidence, it may be appropriate to clarify the Order under Rule 60.01," which allows correction of clerical mistakes. Because the court specifically recalled that it had intended to find that Nancy Reif's reasonable expenses were $1,000/month, it amended its findings to reflect that amount. However, if an appeal is pending, Rule 60.01 requires leave of the appellate court for clerical corrections. The record does not indicate that such leave was ever requested, and the attempted correction was not considered on appeal.

On appeal of the original order, this court held that even if Nancy Reif's reasonable expenses were only $1,400 rather than $1,800 per month, an award of only $400/month temporary maintenance was insufficient as a matter of law in view of the duration of the marriage, the parties' former affluent lifestyle, Nancy Reif's contribution as a homemaker and absence from traditional employment, her educational expenses, and the fact that John

Reif's monthly income exceeded his determined expenses by $1,125. Because the evidence failed "to sustain the trial court's conclusions of law and judgment," this court remanded for "further proceedings." *Reif*, 410 N.W.2d at 416.

On remand, Nancy Reif moved for increased maintenance of $1,000/month for 15 years, and for attorney's fees. John Reif countered with a motion for child support, supported by an affidavit in which he claimed monthly net income of $3,142.98 and expenses, including $400/month maintenance, of $3,123.72. In its amended findings, the trial court found that Nancy Reif had net monthly expenses of $1,000, and was capable of contributing to her expenses. The court also found that John Reif had monthly income of $3,142.98, and living expenses of $2,400, including the cost of maintaining a home for himself and the children and financing the property settlement. The court concluded that John Reif had "available to him the sum of $600 which should be utilized for the payment of maintenance," but that no other sums were available. The court ordered maintenance increased to $600/month, but declined to make the increase retroactive, and denied John Reif's motion for child support and Nancy Reif's request for attorney's fees. Nancy Reif appeals.

### ISSUES

1. Did the trial court abuse its discretion in ordering a non-retroactive increase in temporary maintenance to $600 per month?

2. Did the trial court abuse its discretion in denying attorney's fees?

### ANALYSIS

#### I

Maintenance may be awarded upon a showing that a party lacks sufficient resources to provide for reasonable needs and is unable to provide for reasonable self-support. Minn.Stat. § 518.552, subd. 1 (1986). The amount and duration of the award are left to the trial court's discretion after consideration of enumerated factors.

Minn.Stat. § 518.552, subd. 2. The underlying findings upon which the court bases its award must be affirmed unless clearly erroneous, *Garcia v. Garcia*, 415 N.W.2d 702, 704 (Minn.Ct.App.1987), and the award will not be disturbed if it has an acceptable basis in fact and principle. *DuBois v. DuBois*, 335 N.W.2d 503, 507 (Minn.1983).

In this case, the trial court's central findings are inadequately explained in light of the evidence.

First, the court's finding that Nancy Reif would have an income of $1,000 per month was not supported by any evidence that she was capable of earning $400 per month. To the contrary, Nancy Reif testified that she had been unable to find a bookkeeping job, and the only other type of employment she was qualified for was minimum-wage work. Even that employment would be hindered by her full-time school work and lengthy commute. Absent additional evidence, the trial court's finding on Nancy Reif's monthly income was speculative. *See Nardini v. Nardini*, 414 N.W.2d 184, 197 (Minn.1987) ("Being capable of employment and being appropriately employed are not synonymous"); *Laumann v. Laumann*, 400 N.W.2d 355, 359–60 (Minn.Ct.App.1987) (finding on future income from a new career speculative and unsupported by the evidence).

Second, the court obviously erred in stating that after paying his monthly expenses, John Reif would have only $600 per month available to pay maintenance. Subtraction of determined expenses ($2,400) from net income ($3,143) leaves at least $743 available for maintenance payments. We do not consider *de minimus* an arithmetical error which could increase Nancy Reif's monthly income by 24%.

In addition, questions still remain on the appropriate amount and duration of maintenance. This court previously held that the temporary maintenance award of $400 was an abuse of discretion in view of the parties' affluent lifestyle, and Nancy Reif's age, 20–year absence from significant employment, and contribution as a homemaker. *Reif*, 410 N.W.2d at 416.

The only factor cited by the court on remand to counterbalance those considerations was the standard of living of the children. That factor is not among those listed in Minn.Stat. § 518.552, subd. 2, and the trial court's order effectively removes any contribution Nancy Reif might have made to her children's lifestyle.

 Also, the trial court does not appear to have considered the statutory preference for permanent maintenance. Minn. Stat. § 518.552, subd. 3. Although Nancy Reif stated an intention to become self-supporting and is working toward that goal, whether and when she will be able to meet her own needs cannot be determined with certainty from the evidence. Nancy Reif will reenter the labor force at age 46 after a 23–year hiatus, and there was no evidence on the availability of nursing positions in the area or on what Nancy Reif could earn if she obtained a position. Where future earnings are uncertain, maintenance awards should be permanent, subject to future modification. *See, e.g., Nardini,* 414 N.W.2d at 198–99; *Musielewicz v. Musielewicz,* 400 N.W.2d 100, 104 (Minn. Ct.App.1987), *pet. for rev. denied* (Minn. Mar. 25, 1987).

It is important to note that Nancy Reif requested permanent maintenance at the initial hearing. Although she stated her intention to become self-supporting, there was no evidence of her ability to do so and we do not find the availability of nursing jobs an appropriate subject of judicial notice. In *Nardini,* which also involved a long-term traditional marriage where the wife had limited education and a lengthy absence from employment, the court said:

> The best that can be said, however, of the prospect of [appellant's] becoming fully self-supported through a combination of income from investments and employment is that it is uncertain at this time. The statute requires that uncertainty to be met by an award of permanent maintenance with the order left open for later modification. Minn.Stat. § 518.552, subd. 3 (1986). That the trial court retains jurisdiction over a temporary award does not make temporary

maintenance an acceptable alternative when it is uncertain that the spouse seeking maintenance can ever become self-supporting.

414 N.W.2d at 198. Because the trial court made no findings on this issue, we remand for modification or a specific determination on why the award should not be permanent, subject to modification when Nancy Reif obtains employment.

 We cannot agree with the dissent's equation of the "choice" to return to school with willful failure to pay child support. The legislature has specifically required courts to consider the acquisition of "education or training" in setting maintenance awards. Minn.Stat. § 518.552, subd. 2(b). It would be contrary to the public policy expressed in the statute to foreclose her attempt to become self-supporting by completing a college education she interrupted 23 years earlier to marry and raise the parties' children. In light of these circumstances, the trial court properly denied John Reif's request for child support. *See Fernandez v. Fernandez,* 373 N.W.2d 636, 639 (Minn.Ct.App.1985) ("It would be counterproductive to award an amount of maintenance necessary to provide retraining and then take it away for child support.").

 The court also refused to make its increase from $400 to $600 retroactive, finding that John Reif did not have any funds available above his budget to make a retroactive payment. Since the $200 was found to be payable out of John Reif's excess income and there is no evidence that John Reif does not have the funds to pay retroactively, the increase should be retroactive.

## II

 Minn.Stat. § 518.14 (1986) provides that, after considering the financial resources of both parties, the court may require one party to pay a reasonable amount of attorney's fees to enable the other party to carry on or contest the proceeding. As noted in the prior appeal of this case, the trial court's discretion in this area is "so broad that a reviewing court rarely will reverse," *Reif,* 410 N.W.2d at

416, and we do not find an abuse of discretion. However, in view of the nature of this appeal and the parties' relative financial circumstances, Nancy Reif is awarded $1,000 as reasonable attorney's fees incurred on appeal.

## DECISION

Reversed and remanded.

RANDALL, Judge, dissenting.

I respectfully dissent. I would affirm the trial court's increase in maintenance from $400 to $600 a month rather than remand this case to the trial court for the second time.

Repetitive remands cost the parties to a dissolution several hundred to a few thousand dollars more in additional fees and costs, and should be done sparingly and only for situations that cannot be handled adequately by a review of the record. I do not find this second remand warranted. I find no abuse of discretion by the trial court.

The majority finds it reversible error that the trial court found respondent's disposable income available for maintenance to be $600 rather than $743. I do not see the need for the expense of a remand because of a simple mathematical calculation that can be done by this court as well as the trial court. Whether respondent's disposable income is $600 or $743 a month, the issue before a court of review remains whether the $600 a month granted by the trial court is so clearly an abuse of discretion as to require reversal. The majority's conclusion appears to be premised on the belief that appellant will receive all of respondent's disposable income as maintenance. I find no law stating that every dollar of disposable income, after deducting net expenses, has to be paid by an obligor to an obligee.

In weighing the factors as to whether the trial court abused its discretion in awarding $600 a month maintenance, it is meaningful that respondent asked for child support, that appellant resisted paying child support, and that the trial court agreed with appellant. The trial court did not have to. The record would support a finding that appellant had the health and capabilities of working full-time for something between $4.00 and $5.00 an hour, as she had in the past. Concededly, that is not a lot of money. However, based on the child support guidelines, the court could have required appellant to pay 17 percent of her net income to respondent as child support. Minn.Stat. § 518.551, subd. 5. Further, the court would have been justified in finding that, even though she chose to go to school, it would still impute to her a reasonable amount of income. *See Ulrich v. Ulrich*, 400 N.W.2d 213, 217 (Minn. Ct.App.1987); *Hopp v. Hopp*, 279 Minn. 170, 175–76, 156 N.W.2d 212, 217–18 (1968); *Doherty v. Doherty*, 388 N.W.2d 1, 3 (Minn.Ct.App.1986). In other words, appellant's voluntary decision not to work, her resistance to paying child support, and her desire to go on to school, is not binding on a trial court.

The trial court's acceptance of appellant's claim that she did not want to be burdened by child support was legitimate, in view of her reasonable efforts to go back to school. But now the trial court's decision to relieve appellant, the noncustodial parent, of the normal obligation to contribute something to child support is a factor for the trial court to balance in how much monthly maintenance is reasonable. Neither *Nardini* nor any other case in the State of Minnesota states that if a parent voluntarily relinquishes custody of minor children, voluntarily stays out of the job market, and successfully resists paying child support because of a desire to go back to school, as a matter of law, the custodial spouse must contribute 100 percent to a noncustodial spouse's living expenses. Depending on the facts and circumstances and how a trial court weighs the evidence, it would be within a trial court's discretion to grant an obligee 100 percent of those living expenses while going to school. But, I know of no case that says a trial court is *required* to. However, that is what the majority implies.

The majority attempts to portray appellant as a *"Nardini"* spouse. I disagree.

Mrs. Nardini was 56, there had been a 31 year marriage, and she was " * * * possessed of only a high school education and without special employment skills of any kind." *Nardini v. Nardini,* 414 N.W.2d 184, 197 (Minn.1987). Here, appellant is 43, the marriage lasted 23 years, and she is working toward a nursing degree which she will complete at the age of 46. Appellant was so confident of her ability to complete her schooling toward an RN degree that, at the initial dissolution hearing, her chief concern was the amount of temporary maintenance while she returned to school, not its permanency. Both parties were satisfied that appellant would be self-supporting after graduation. With the nursing job market showing a critical nationwide shortage, appellant will graduate with a truly employable professional skill. None of these facts were present in *Nardini.*

The facts in this case parallel *Hall v. Hall,* 417 N.W.2d 300 (Minn.Ct.App.1988), in which this court affirmed a trial court which granted appellant spouse temporary maintenance of $300 per month for 36 months rather than the requested permanent maintenance of $500 per month. Mrs. Hall appealed, claiming it was error not to grant her request for permanent maintenance. In *Hall,* appellant was 39 years old at the time of the dissolution, had been married for 18 years, and, although employed at the time of the dissolution with a net monthly income of $978.24, the trial court found that appellant Hall had a limited earning ability, and that she wanted to obtain a four-year bachelor degree. *Hall* at 301.

There was a division of assets in *Hall* similar to the case before us. Like this case, the father in *Hall* had physical custody of the one minor child, and Mrs. Hall was not required to pay any child support, that issue being reserved by the court.

This Court of Appeals in *Hall* found that Mrs. Hall was entitled to only temporary rehabilitation maintenance, that "there was no evidence that appellant is unlikely to become self-sufficient," and went on to distinguish Mrs. Hall from Mrs. Nardini. *Id.* at 303. I also find *Nardini* distinguish-

able, and *Hall* controlling, particularly in view of our limited role as a court of appellate review in scrutinizing the discretion of a trial court on the amount and duration of maintenance. The record here, like the record in *Hall,* is devoid of evidence that Mrs. Reif "is unlikely to become self sufficient."

In essence, it appears the majority retried the facts and assessed weight and credibility to the evidence on a de novo basis. Under our accepted standard of review, I do not find the trial court abused the wide discretion accorded to it in assessing the amount and duration of maintenance. *Erlandson v. Erlandson,* 318 N.W.2d 36, 38 (Minn.1982).